**KRONENBERGER BURGOYNE, LLP**

Karl S. Kronenberger (Cal. Bar No. 226112)
Jeffrey M. Rosenfeld (Cal. Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiff Digby Adler Group LLC
*dba* Bandago

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIGBY ADLER GROUP LLC *DBA* BANDAGO**<br><br>　　　　**Plaintiff,**<br><br>　　**vs.**<br><br>**IMAGE RENT A CAR, INC., VAN RENTAL CO., INC.,**<br><br>　　　　**Defendants.** | Case No. 3:10-cv-00617-SC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE**<br><br>DATE:　　June 16, 2010<br>TIME:　　10:00 a.m.<br>CTRM:　　1, 17th Floor<br>JUDGE:　 The Hon. Samuel Conti |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS/TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT .............................................................................................................. 4

    A. This Court has personal jurisdiction over Defendants. .................................. 4

        1. Defendants purposefully directed their misconduct toward California ... 5

        2. Plaintiff's claims arise from Defendants' forum-related activities ......... 11

        3. Exercise of jurisdiction is reasonable ................................................... 11

    B. Venue is proper under 28 U.S.C. §1391(b)(1) & (2) ...................................... 13

    C. This action should not be transferred to New York where Plaintiff's choice of
        forum is entitled to deference and Defendants have not shown the requisite
        inconvenience. ............................................................................................. 14

CONCLUSION ......................................................................................................... 18

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**TABLE OF AUTHORITIES**

*Allstar Marketing Group, LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109
(C.D. Cal. 2009) ........................................................................ 14, 15

*Brayton Purcell LLP v. Recordon & Recordon,* 575 F.3d 981 (9th Cir.2009)................. 11

*Calder v. Jones*, 456 U.S. 783 (1984) ........................................................ 5, 6

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F. Supp. 2d 1183
(S.D. Cal. 2007) ........................................................................... 16

*Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir. 1997) ........................ 6

*Hope v. Otis Elevator Co.,* 389 F. Supp. 2d 1235 (E.D. Cal. 2005) .......................... 15

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743
(C.D. Cal. 1995) .......................................................................... 12

*Metz v. U.S. Life Ins. Co. in City of New York,* 674 F. Supp. 2d 1141 (C.D. Cal. 2009) 16

*Nissan Motor Co., Ltd. v. Nissan Computer Corp.,* 89 F. Supp. 2d 1154
(C.D. Cal. 2000) ........................................................................ 9, 11

*Office Depot Inc. v. Zuccarini,* 596 F.3d 696, 701-02 (9th Cir. 2010) ...................... 14

*Panavision Int'l v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998) ................................ 6

*Pebble Beach Co. v. Caddy,* 453 F.3d 1151 (9th Cir. 2006) ............................... 4, 5

*Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007 (9th Cir. 2002)................. *passim*

*Safarian v. Maserati North America, Inc.,* 559 F. Supp. 2d 1068 (C.D. Cal. 2008).. 13, 15

*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.,* No. C 05-0587 MHP,
2005 WL 701599 (N.D. Cal. Mar. 23, 2005).............................................. 9

*Sykes Lab., Inc. v. Kalvin,* 610 F. Supp. 849 (C.D. Cal. 1985) ........................... 9

*Vu v. Ortho-McNeil Pharmaceutical, Inc.,* 602 F.Supp.2d 1151 (N.D. Cal. 2009) ......... 15

**Federal Statutes and Other Authorities**

28 U.S.C. §1404(a) ................................................................. *passim*

28 U.S.C. §1391................................................................... *passim*

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**INTRODUCTION**

Plaintiff and Defendants compete in the high-end car and van rental business, including the rental of 15-passenger and Dodge "Sprinter" vans.  In an overt act of bad faith and greed, Defendants registered a domain name <www.bandago.net>, a domain that is identical to Plaintiff's fanciful BANDAGO trademark.  Defendant then used the domain name to display a car and van-rental website that targeted California consumers and those travelling to California.  As a direct result of Defendants' actions, Defendants caused confusion among California consumers about the relationship between Plaintiff and its car and van rental service on the one the hand and Defendants and their car and van rental service on the other hand.  Plaintiff filed a complaint alleging this misconduct.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction and improper venue.  In the alternative, Defendants ask the Court to transfer this action to the Eastern District of New York under 28 U.S.C. §1404(a).  Defendants' arguments fail on their face.  Moreover, the evidence that Defendants proffer in support of their motion is not credible, and in fact, is contradicted by Defendants' own website.  In the end, Defendants are simply seeking to delay this action and impose unnecessary costs on Plaintiff.

First, Defendants argue that this Court does not have personal jurisdiction over Defendants because Defendants "have never directed any activities or advertising at residents of California."  This statement is false and contradicted by credible evidence.  Defendants' own website—which it displayed in connection with <www.bandago.net>—contains advertisements targeting California residents and people travelling to California.  Where Defendants purposely directed their website toward California, the exercise of personal jurisdiction is proper.

Second, Defendants argue that this Court is an improper venue under 28 U.S.C. §1391.  Again Defendants' arguments fail.  As noted above, this Court has personal jurisdiction over Defendants, and thus venue is proper under 28 U.S.C. §1391(b)(1) & (c).  Moreover, by registering and using <www.bandago.net> to offer competitive services,

1    Defendants caused a substantial part of the events giving rise to Plaintiff's claim to occur

2    in northern California (*i.e.* Plaintiff's headquarters).    Finally, the domain name

3    <www.bandago.net> is situated in the Northern District of California under 28 U.S.C.

4    §1391(b)(2), the location of Verisign, Inc., the registry for ".net" domain names.  For these

5    multiple reasons, this Court is a proper venue.

6         Finally, Defendants argue that this action should be transferred to the Eastern

7    District of New York under 28 U.S.C. §1404(a).  However, Defendants ignore the fact that

8    Plaintiff's choice of venue is entitled to substantial deference.  Moreover, Defendants fail

9    to provide any credible arguments or evidence suggesting that a transfer would promote

10   convenience or efficiency.

11        Defendants cannot cybersquat on Plaintiff's trademark, use that domain name to

12   offer competitive service to Californians, but then pretend like they have no connection to

13   the State.  The Court must deny Defendants' motion.

14                                  **BACKGROUND**

15        Plaintiff rents cars and vans, including 15-passenger vans and Dodge "Sprinter"

16   vans for tours, groups, and extended travel and long-term use.  (Compl. ¶10.)  Plaintiff is

17   based in San Francisco, California but provides van rentals for use throughout the United

18   States.  (*Id.* ¶11.)  Plaintiff has been doing business under the fictitious business name

19   and service mark BANDAGO (the "Mark") since 2003.  (*Id.* ¶12.)  On or about August 7,

20   2003, Plaintiff registered the domain name <www.bandago.com> to operate a website for

21   its car and van rental business (the "BANDAGO Website").  (*Id.* ¶13.)  On May 27, 2008,

22   Plaintiff filed an application to register the Mark with the United States Patent and

23   Trademark Office (Serial No. 77484380).  (*Id.* ¶12.)  The Mark has not yet registered, but

24   the publication period has been completed and Plaintiff expects the application to

25   proceed to registration shortly.  (*Id.* ¶12.)  Plaintiff has invested significant resources into

26   building its brand name and reputation in connection with the Mark through advertising

27   and marketing, including building and maintaining its BANDAGO Website.  (*Id.* ¶14.)

28   //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    Defendants compete with Plaintiff in the van and car rental business, including 15-

2 passenger vans and Dodge "Sprinter" vans for tours, groups, and extended travel and

3 long-term use.  (Compl. ¶15.)  Notably, Plaintiff and Defendants are some of the only

4 companies to rent Dodge "Sprinter" vans, and such vans are in high demand and attract

5 corporate clients who can and do spend in excess of six figures renting multiple vehicles

6 for extended periods. As such, even a single client can represent tremendous value. (*Id.*

7 ¶15.)  While Defendants are based in New York, they advertise their nationwide car and

8 van rentals throughout the United States, including ads specifically targeted at California.

9 (*Id.* ¶16; Declaration of Jeffrey M. Rosenfeld in Opposition to Motion to Dismiss

10 ("Rosenfeld Decl.") ¶¶ 3-20 & Exs. A-R.)  Defendants own and operate the website

11 located at <www.imagerentacar.com> (the "Image Website").  (Compl.¶17.)  The Image

12 Website is a highly interactive website, which allows users to make van and car rental

13 reservations with Defendants online, by allowing users to input their personal information

14 and payment information through the Image Website.  (Rosenfeld Decl. ¶¶14-16 & Exs.

15 L-N.)

16    On or about August 28, 2008, Defendants registered the domain name

17 <www.bandago.net> (the "Disputed Domain").  (Compl. ¶19; Declaration of Gad Sebag in

18 Support of Defendants' Motion to Dismiss the Complaint ("Sebag Decl.") at 2:21-24.)

19 Defendants re-directed Internet users who typed in the Disputed Domain into their web

20 browser to Defendants' Image Website.  (Compl. ¶21; Sebag Decl. at 2:21-24.)   Once

21 re-directed to the Image Website, users were encouraged to make reservations for

22 Defendants' van and car rental services.  (Rosenfeld Decl. ¶¶14, 16 & Exs. L, N.)

23    Defendants' registration and use of the Disputed Domain diverted customers

24 seeking Plaintiff's BANDAGO Website to Defendants' Image Website, so that those

25 redirected customers would purchase Defendants' services instead of Plaintiff's.  (Compl.

26 ¶25.)   In fact, Defendants registered the Disputed Domain knowing that Plaintiff provided

27 similar services under the Mark and via its own BANDAGO Website, and knowing that its

28 actions would likely harm Plaintiff in California.  (Compl. ¶29.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**ARGUMENT**

2      Defendants seek to dismiss the complaint for lack of personal jurisdiction and

3   improper venue.  In the alternative, Defendants seek to transfer this action to the Eastern

4   District of New York under 28 U.S.C. §1404(a).   Defendants' arguments fail.  <u>Most</u>

5   <u>significantly, Defendants' evidence of its lack of contacts with California is not credible</u>.

6   In fact, Defendants' evidence is contradicted by their own website, which demonstrates

7   Defendants' significant contacts with California.   Because the exercise of personal

8   jurisdiction over Defendants is reasonable, the Court must deny Defendants' motion to

9   dismiss.   Additionally, because Plaintiff's choice of venue is entitled to substantial

10  deference, and because Defendants have made no persuasive argument that

11  transferring this action would promote convenience, the Court must also deny

12  Defendants' motion to transfer.

13  **A.      This Court has personal jurisdiction over Defendants.**

14      To establish that a court has personal jurisdiction over a defendant, a plaintiff must

15  show: 1) that the state's long-arm statute confers personal jurisdiction over the

16  defendant; and 2) that the exercise of jurisdiction comports with the constitutional

17  principles of due process. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

18  1019 (9th Cir. 2002).  California's long-arm statute permits the exercise of jurisdiction to

19  the same extent as the Constitution.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

20  1155 (9th Cir. 2006).  Thus, in this case, it is only necessary to consider the constitutional

21  principles of due process, which require Defendants to have minimum contacts with

22  California such that the maintenance of this suit does not offend traditional notions of fair

23  play and substantial justice.  *See Rio*, 284 F.3d at 1019.

24      The Ninth Circuit employs a three-part test to analyze whether a defendant's

25  contacts satisfy due process:

26      1.   Whether the defendant has performed some act or consummated some

27           transaction within the forum or otherwise purposefully availed itself of the

28           privileges of conducting activities in the forum;

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

2.  Whether the claim arises out of or results from the defendant's forum-related activities; and

3.  Whether the exercise of jurisdiction is reasonable.  (*Pebble Beach*, 453 F.3d at 1155)

Where, as here, the Court receives only written submissions regarding personal jurisdiction, Plaintiff need only make a prima facie showing of jurisdiction to avoid Defendants' motion to dismiss.  *See Rio*, 284 F.3d at 1019.  And in determining whether Plaintiff has made its prima facie showing of personal jurisdiction, the uncontroverted allegations in the complaint must be taken as true, and any conflicts in the parties' affidavits must be resolved in Plaintiff's favor.  *See id.*

Here, the Court has personal jurisdiction over Defendants because: 1) Defendants purposely used the Disputed Domain to direct their Image Website toward California; 2) Plaintiff's claims arise out of Defendants' misuse use of the Disputed Domain to market their Image Website in California; and 3) the exercise of jurisdiction is reasonable when Defendants were aware that Plaintiff resides in California and would be harmed by Defendants' misconduct.

**1.  Defendants purposefully directed their misconduct toward California.**

Defendants purposefully directed their misconduct conduct toward California by targeting consumers within the State with their Image Website, and causing harm to Plaintiff and consumers within California.

In the Ninth Circuit, a plaintiff can establish a defendant's purposeful availment by showing either: 1) that the defendant "purposefully availed" itself of the privilege of conducting activities in the forum state, or 2) that the defendant "purposefully directed" its activities toward the forum state.  *Pebble Beach*, 453 F.3d at 1155.  In *Calder v. Jones,* 456 U.S. 783, 788-89 (1984), the Supreme Court found that the second test—*i.e.* the purposeful direction test—is satisfied where the defendant 1) committed an intentional act, which 2) was expressly aimed at the forum state, and which 3) caused harm, the brunt of which was suffered and which the defendant knew was likely to be suffered in

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   the forum state.  *Calder v. Jones*, 456 U.S. at 788-89 (1984).

2        As relates to websites, the Ninth Circuit has found that the operation of a passive

3   website—without more—is insufficient to confer personal jurisdiction under the

4   "purposeful direction" test.[1]   However, the operation of an interactive website directed

5   toward Californians, <u>or</u> the operation of a passive website supplemented by targeted

6   advertising or misconduct will push a defendant's misconduct into "purposeful direction."

7   Thus, in *Rio*, 284 F.3d at 1020-21, the Ninth Circuit found that while the defendant

8   operated a passive website, it specifically targeted consumers in the forum state through

9   print and radio advertising.   The Ninth Circuit found that this "insistent marketing

10  campaign" in the forum state easily satisfied the "purposeful direction" test.  *Id.*  Similarly,

11  in *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998), the Ninth Circuit

12  found that the "purposeful direction" test was satisfied where the defendant did more than

13  simply register an improper domain name.  The Ninth Circuit found that the defendant

14  registered the domain name as part of a plan to sell it to Panavision, which was located

15  in the forum state.  *Id.*

16        Here, Defendants have purposefully directed their van and car rental website

17  toward Californians and those traveling to California.  Importantly, Defendants have done

18  far more than create a passive website using the Disputed Domain.  Rather, Defendants

19  used the Disputed Domain name to create <u>a highly interactive website, which they

20  specifically targeted at residents of California and those travelling to California</u>.

21  Defendants' purposeful direction towards California is evident throughout their marketing

22  materials.  As limited examples:

23  •   Defendants advertise that they deliver conversion van rentals to San Diego, San

---

[1] A passive website is one that only makes information available to users.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).  By comparison, a highly interactive website allows the defendant to enter into contracts with users in a foreign jurisdiction. *See id.* And between these two extremes are interactive websites that allow a user to exchange information with a host computer, but do not allow the users to purchase goods or services, or otherwise enter into a contract. *See id.* In this latter context, the exercise of jurisdiction is determined by examining the commercial nature of the exchange of information that occurs on the website.  *See id.*

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Jose, Los Angeles, California, Sacramento, Oakland, Santa Ana, Riverside, Bakersfield, Stockton, Glendale, Irving, Huntington Beach, among other locations. (Rosenfeld Decl. Ex. A.)

- Defendants advertise, "W[sic] buy our vans from STERLING Vans And Directly from EXPLORER Van company then we rent them to Music Groups and corporate accounts who will use the vans for long distance runs to California . . ." (Rosenfeld Decl. Ex. B.)

- Defendants advertise, "IMAGE VAN Rentals has been serving the San Diego area . . . for decades."  (Rosenfeld Decl. Ex. C.)

- Defendants advertise that "[r]enting a large van to explore each region's unique vineyards is the best way to see and taste the delicious wines that California has to offer."  (Rosenfeld Decl. Ex. D.)

- Defendants advertise their vans as "vehicles that have primarily driven cross country and long distances to locations such as Orlando Florida, Miami, San Francisco."  (Rosenfeld Decl. Ex. E.)

- Defendants have advertised their "hybrid fleet" as comprising "1,000 Priuses, and 500 Nissan Altima Hybrids in Miami. Hybrid locations: Throughout California; Seattle, Wash.; Portland, Ore.; Washington, D.C.; Plans for Boston, Fort Lauderdale, Orlando West Palm Beach, New York City and Philadelphia." (Rosenfeld Decl. Ex. F.)

- Defendants have advertised their "California 14 Passenger Rental Vans" on the Image Website. (Rosenfeld Decl. Ex. G.)

- Defendants have advertised their van rental services as "nationwide" on the Image Website.  (Rosenfeld Decl. Ex. H.)

- Defendants have advertised their "Dodge Sprinter [as] on its way from new York to LA" and displayed photographs of the van travelling to California on their Image Website.  (Rosenfeld Decl. Ex. I.)

Despite this blatant California-oriented marketing, Defendants argue that they

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS/TRANSFER VENUE**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

haven't actually sold their services to any consumers from California or travelling to California.  Defendants' statement is not credible.  In fact, Defendants' California-based rentals are evident from the consumer reviews that Defendants have posted on their Image Website, including by way of example only:

> For my birthday I really wanted to do something very special for myself! **I live in California**, but was traveling to New York.  When renting a car I thought it might be nice to really go first class and in style!  **I discovered Image Rent A Car online** and was very impressed with the large selection of vehicles that could fit most any ones budget that was looking for a luxury experience!!  . . .  I enjoyed the service so much that I will be returning and will be renting again next week!! Thanks again Jose you are the best and Image is truly First Class!!! LESAH Handford~ Southern California.  (emphasis added)

> and

> With the holidays fast approaching, my wife, daughter, and I departed sunny Los Angeles for the frozen tundra and tenebrous skies of southeastern Michigan. . . .  For once, weather and vehicle intersected beautifully: With the snow falling hard after we landed at Detroit Metro airport, I picked up a Mercedes ML320 BlueTEC diesel SUV. (Rosenfeld Decl. Exs. J & K.)

Moreover, <u>Defendants' website is highly interactive</u>.  It allows visitors to make car and van reservations through the Image Website.[2]  (Rosenfeld Decl. Ex. L.)  To initiate the reservation process on Defendants' website, a user can click the "Rent now" button right below Defendants' statement they deliver their vehicles to multiple locations in California, including San Jose, San Diego, and Los Angeles.  (*Id.* Ex. A.)  After selecting the type of car or van they wish to rent, users are asked to enter their personal information—including their payment information (i.e. credit card information)—into the Image Website.  (*Id.* Ex. L.)  The Image Website states that by clicking the "Submit

---

[2] Additionally, Defendants have contracted with several third parties based in California to promote their websites.  As examples, Defendants maintain a profile with Facebook, through which they advertise extensively.  (Rosenfeld Decl. Exs. N-O.)  Facebook is based in Palo Alto, CA.  (*Id.* Ex. Q.)  Defendants also maintain an account with Twitter, through which they advertise extensively.  (*Id.* Ex. N, P.)  Defendants' Twitter account has more than 250 followers, some of whom reside in California.  (*Id.* Ex. P.)  Twitter is based in San Francisco, CA.  (*Id.* Ex. R.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Reservation" button, the user is "making a reservation." (*Id.* Ex. L.)  Defendants' website

2   allows consumers to select California as their state of Origin—including for corporate

3   registrations.   (*Id.* Ex. M.)   These characteristics make Defendants' website highly

4   interactive.

5           An additional basis for jurisdiction exists here because Defendant engaged in

6   misconduct knowing that the brunt of the harm would be felt in California.  In *Nissan*

7   *Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1160 (C.D. Cal. 2000),

8   the Ninth Circuit found that personal jurisdiction existed where the defendant deliberately

9   registered a domain name and associated the domain with its website "to exploit the

10   plaintiffs' goodwill by profiting from consumer confusion."  The Ninth Circuit reasoned that

11   the defendant had purposefully directed its misconduct toward California where the brunt

12   of the harm would be felt in California, the location of the plaintiff.  *Id*; *see also Sutter*

13   *Home Winery, Inc. v. Madrona Vineyards, L.P.,* No. C 05-0587 MHP, 2005 WL 701599,

14   *4 (N.D. Cal. Mar. 23, 2005) ("[T]he fact that a substantial number of consumers of

15   plaintiff's wine who reside in this district may be confused by defendant's use of the

16   'Mélange de Trois' mark is sufficient to establish th[at] this jurisdiction is a proper venue

17   for the adjudication of plaintiff's claim"); *Sykes Lab., Inc. v. Kalvin,* 610 F. Supp. 849, 860

18   n.8 (C.D. Cal. 1985) (observing that trademark infringement occurs in the district "where

19   the passing off occurs, *i.e.*, where the deceived customer buys the defendant's product in

20   the belief that he is buying the plaintiff's") (internal citations omitted).  The situation here

21   is identical to *Nissan Motor Co.*:  Defendants' misuse of the Disputed Domain caused

22   harm in California, the location of Plaintiff.  In fact, as a result of Defendant's misconduct,

23   Plaintiff received numerous consumer inquiries about the relationship between Plaintiff

24   and Defendants.  (Declaration of Sharky Laguana in Opposition to Motion to Dismiss

25   ("Laguana Decl.") ¶¶4-5; Declaration of Guy Higbey in Opposition to Motion to Dismiss

26   ("Higbey Decl.") ¶¶4-5; Declaration of Keeley Pederson in Opposition to Motion to

27   Dismiss ("Pederson Decl.") ¶¶4-5; and Declaration of Andrew Moore in Opposition to

28   Motion to Dismiss ("Moore Decl.") ¶¶4-6.)

Case No. 3:10-cv-00617-SC

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS/TRANSFER VENUE**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Importantly, Defendants knew that Plaintiff was based in California at the time they

2   registered the Disputed Domain.  (Compl. ¶¶10-14, 29.)  In their motion, Defendants do

3   not challenge this knowledge.  Nor do Defendants challenge the fact that they knew that

4   Plaintiff operated a competitive van rental service, or that they knew that Plaintiff had a

5   large customer base in California who associated Plaintiff with its fanciful BANDAGO

6   trademark.[3]  As alleged in the complaint, Defendants sought to trade off of Plaintiff's

7   trademark by registering the Disputed Domain and associating it with a website targeted

8   at Californians.  As a result, the brunt of the harm caused by Defendants' misconduct

9   was felt in California, the location of Plaintiff and most of Plaintiff's customers.

10   Defendants' purported evidence of a lack of contacts with California is simply not

11   credible.  In their motion, Defendants claim that "they do not maintain any contacts with

12   California," have "never directed any activities or advertising at residents of California,"

13   and "did not direct or encourage residents of the State of California to do . . . any

14   business with" Defendants.[4]   (Mot. at 2:7-8; 2:26-26; Sebag Decl. at 2:23-24.)

15   Defendants also claim that they operate a "passive website."  (Mot. at 5:5.)  All of these

16   statements are contradicted by the evidence.  The evidence establishes that Defendants

17   purposely sought and obtained business in California.  (Rosenfeld Decl. ¶¶3-20 & Exs.A-

18   R.)   The evidence also establishes that Defendants' website was highly interactive,

19   allowing customers in California to make reservations.  (*Id.* ¶¶14-15 & Exs. L-M.)  Thus,

20   despite Defendants unbelievable claims, the evidence establishes that Defendants

21   purposefully directed their website activities toward California.

22   //

23

---

24   [3]  In determining whether Plaintiff has made a showing of personal jurisdiction, the

25   uncontroverted allegations in the complaint must be taken as true, and any conflicts in
    the parties' affidavits must be resolved in Plaintiff's favor.  *See Rio*, 284 F.3d at 1019.

26   [4]  Defendants' attorney provides a declaration in support of Defendants' motion, which
    serves as the basis for many of the facts supporting the motion.  However, Mr. Huebner

27   provides no foundation for his supposed personal knowledge of the facts in his
    declaration, including that statement that Defendants have "never had any contact with or

28   done business in California."

Case No. 3:10-cv-00617-SC                          **PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
                              10                    **MOTION TO DISMISS/TRANSFER VENUE**

### 2.    Plaintiff's claims arise from Defendants' forum-related activities.

Plaintiff's claims arise from Defendant's forum-related activities, namely Defendants' cybersquatting of the Disputed Domain.  Specifically, Plaintiff operates a van rental service, which is based in California and targets California consumers.  Defendants sought to trade off of Plaintiff's good will by registering the Disputed Domain, which was identical to Plaintiff's fanciful BANDAGO trademark.  Defendants then used the Disputed Domain to operate a van and car rental website that targeted California customers.

As a result of Defendants' misuse of the Disputed Domain in connection with its highly interactive Image Website, consumers in California were confused about the relationship between Plaintiff, Plaintiff's BANDAGO trademark and Plaintiff's services on the one hand and Defendant and Defendant's Image Website on the other hand. (Laguana Decl. ¶¶4-5.)  California has a strong interest in protecting its citizens from consumer confusion.  *Nissan Motor Co., Ltd.,* 89 F. Supp. 2d at 1154; *See Brayton Purcell LLP v. Recordon & Recordon,* 575 F.3d 981, 988 (9th Cir.2009) (finding personal jurisdiction under the *Calder* effects test where defendant knew the forum where the defendant resided and it was foreseeable that the resulting harm, such as consumer confusion, would be felt in that forum).  Thus, Defendants' forum-related activities gave rise to this action.

### 3.    Exercise of jurisdiction is reasonable

In determining the reasonableness of the exercise of personal jurisdiction, courts consider seven factors: 1) the extent of a defendant's purposeful interjection; 2) the burden on the defendant in defending in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.  *Rio Properties*, 284 F.3d at 1021.  As no single factor is dispositive, a court must balance all seven.  *See id.*  Here, these factors demonstrate that it would be reasonable for the Court to exercise jurisdiction over Defendants.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS/TRANSFER VENUE**

- **Defendants' Purposeful Interjection**: As discussed above, *supra* Part A, Defendants have specifically advertised their van and car rental services to California customers and have completed transactions with California residents. Moreover, Defendants registered the Disputed Domain knowing that Plaintiff is based in California and has a substantial customer base in California.

- **Defendants' Burden in Defending in Forum:** In almost any case where the defendant does not reside in the forum state, some inconvenience is inevitable. However, the Ninth Circuit has recognized that modern means of communication and transportation have diminished the burden of defending a lawsuit in a distant forum. *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 748 (C.D. Cal. 1995). Moreover, if this action were dismissed—or transferred to New York—the situation would be reversed, and Plaintiff would experience a reciprocal burden.

- **Extent of Conflict with Sovereignty of Defendants' State:** There is little risk of any conflict with the sovereignty of New York because Plaintiff's claims are primarily federal claims, where the law is consistent between the Ninth Circuit and the Second Circuit. Plaintiff's two state law claims (*i.e.* common law trademark infringement and unfair business practices) are derivative of its federal law claims and do not involve any difference of law that would affect New York's sovereignty.

- **Forum State's Interest in Adjudicating Dispute**: California has an interest in protecting its citizens from misconduct. Here, California has a dual-interest: 1) California has an interest in protecting Plaintiff, as a California-based trademark owner, from misuse of its trademark; and 2) California has an interest in protecting its citizens from actions that are likely to deceive them as to the affiliation of an online good or service—as alleged against Defendants here.

- **The Most Efficient Judicial Resolution**: This Court would be the most efficient forum to resolve this action because the case has already been pending before this Court for three months, the Court is familiar with the pleadings, and the

12

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS/TRANSFER VENUE**

Northern District of California has a shorter median time from filing to trial than the Eastern District of New York—the forum to which Defendants seek a transfer. (Rosenfeld Decl. Ex. T.)

- **The Importance of Forum to Plaintiff's Relief:**  Plaintiff is eager to prosecute this action and recover the Disputed Domain.  Plaintiff filed this action several months ago, and the action is still at the pleading stage.  Requiring Plaintiff to re-file this action in a less convenient forum would prolong the litigation process further and discourage Plaintiff from vindicating its rights.  Thus, maintaining this action before the Court is important to Plaintiff in obtaining the most efficient relief possible.

- **The Existence of an Alternative Forum:**  While, as Defendants suggest, Plaintiff could have brought this action in the Eastern District of New York, Plaintiff was not required to do so.  A plaintiff's choice of forum is entitled to considerable deference where the defendant has purposefully directed its activities toward that state. *Safarian v. Maserati North America, Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008).  Thus, despite the existence of an alternative forum, this factor is entitled to little weight.

Because Defendants purposefully targeted their website activities at California, and because the exercise of personal jurisdiction over Defendants is reasonable, the Court should deny Defendants' motion to dismiss.  To the extent that there is any doubt as to Defendants' contacts with California, the Court should allow jurisdictional discovery to assess the scope of such contacts.

**B.    Venue is proper under 28 U.S.C. §1391(b)(1) & (2).**

Defendants argue that this Court is an improper venue under 28 U.S.C. §1391. Defendants are wrong.  This Court is a proper venue under both §§1391(b)(1) and 1391(b)(2).

First, 28 U.S.C. §1391(b)(1) states that a federal question action can be brought in "a judicial district where any defendant resides, if all defendants reside in the same

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    State."  Where a defendant is a corporation, the defendant shall be deemed to reside in

2    any judicial district which it is subject to personal jurisdiction at the time the action is

3    commenced.  28 U.S.C. §1391(c).  As discussed above, *see supra* Part A, this Court has

4    personal jurisdiction over Defendants based on: a) Defendant's purposeful contacts with

5    California, and b) the harm that Defendants caused to Plaintiff and consumers within

6    California, and particularly in the Northern District of California—where Plaintiff is based.

7    Thus, this Court is a proper venue under 28 U.S.C. §1391(b)(1).

8         Second, venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part

9    of the events giving rise to this action occurred in this district, and the property that is the

10   subject of the action—*i.e.* the Disputed Domain—is situated in this District.  In a suit

11   brought under the Lanham Act, a substantial part of the events giving rise to the claims

12   occur in any district where consumers are likely to be confused by the accused goods,

13   whether that occurs solely in one district or in many.  *Allstar Marketing Group, LLC v.*

14   *Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009).  As discussed

15   above, Defendants targeted their misconduct towards northern California.  Defendants

16   specifically advertised their van and car rental services to California residents using a

17   domain name that was confusingly similar to the trademark of Plaintiff—a California-

18   based competitor.  Moreover, the Disputed Domain is situated in the Northern District of

19   California because Verisign, Inc., the ".net" domain name registry, is based in Mountain

20   View, California.  *See Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 701-02 (9th Cir.

21   2010).  Thus, contrary to Defendants' unsupported arguments, this Court is a proper

22   venue for this action.

23   **C.   This action should not be transferred to New York where Plaintiff's choice of**
     **forum is entitled to deference and Defendants have not shown the requisite**
24   **inconvenience.**

25        While Defendants ask the Court to transfer this action to the Eastern District of

26   New York under 28 U.S.C. §1404(a), they fail to overcome the strong weight accorded to

27   Plaintiff's choice of forum or to establish the requisite inconvenience to warrant a transfer.

28        As an initial matter, a plaintiff's choice of forum is accorded substantial weight, and

1    transfer is not appropriate merely to shift inconvenience from one party to another. *See*

2    *Safarian*, 559 F. Supp. 2d at 1071. Given that: a) this district is Plaintiff's home forum, b)

3    Defendants purposefully targeted their activities at this forum, and c) the Disputed

4    Domain is situated in this forum, there is no reason to engage in the convenience

5    analysis. However, if the Court opts to look at the inconvenience factors, they weigh

6    strongly in favor of keeping this action before the Court, as Defendants certainly have not

7    made the required "strong showing" for a transfer. *See Hope v. Otis Elevator Co.*, 389 F.

8    Supp. 2d 1235, 1243 (E.D. Cal. 2005).

9         To evaluate whether transfer of venue for convenience is warranted under 28

10   U.S.C. §1404(a), courts consider: 1) the plaintiff's choice of forum, 2) the convenience of

11   the parties, 3) the convenience of the witnesses, 4) the ease of access to evidence, 5)

12   the familiarity of each forum with applicable law, 6) the feasibility of consolidation with

13   other claims, 7) any local interest in the controversy, and 8) the relative court congestion

14   and time of trial in each forum. *Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F.Supp.2d

15   1151, 1156 (N.D. Cal. 2009). These factors weigh against transferring this action.

16   • **Plaintiff's Choice of Forum:** As discussed above, Plaintiff's choice of forum is

17       entitled to substantial weight, particularly where Plaintiff resides in this district.

18       Defendants have submitted no evidence suggesting that Plaintiff's choice of venue

19       is not entitled to the customary substantial deference. This factor weighs strongly

20       against transfer.

21   • **The Convenience of the Parties**: This factor does not weigh for or against

22       transfer. Defendants are based in New York. Plaintiff is based in northern

23       California. In either location, a party will be mildly inconvenienced. However, in

24       evaluating the convenience of witnesses under 28 U.S.C. §1404(a), the

25       convenience of a party witness (or its employees) is not nearly as important as the

26       convenience of a non-party witness. *See Allstar Marketing Group,* 666 F.Supp.2d

27       at 1131 (C.D. Cal. 2009). This is particularly true because party witnesses can be

28       compelled to testify regardless of the forum in which the lawsuit is ultimately

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   litigated.  *See id.*

2   • **The Convenience of the Non-Party Witnesses:**  Defendants have provided the

3   Court with no evidence suggesting that the convenience of non-party witnesses

4   would be improved by a transfer.  In particular, on a motion to transfer venue, <u>the</u>

5   <u>moving party must name the witnesses, state their location, and explain their</u>

6   <u>testimony and its relevance</u>.  *See Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,

7   472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007).  Defendants have failed to provide

8   any of this information.  In fact, Defendants have not identified a single non-party

9   or party witness in their motion.  In comparison, Plaintiff's Chief Executive Officer,

10  Sharky Laguana, resides in this district and intends to serve as a witness,

11  testifying as to Plaintiff's adoption and use of the BANDAGO mark and

12  Defendants' misuse of the Disputed Domains.   (Laguana Decl. ¶¶2-3.)

13  Additionally, Plaintiff's employees Guy Higbey, Keeley Pederson, Andrew Moore,

14  and Rachel Lastimosa all reside in northern California and all intend to testify

15  regarding this case, and specifically as to consumer inquiries and consumer

16  confusion resulting from Defendants' misconduct.  (Higbey Decl. ¶3; Pederson

17  Decl. ¶3; and Moore Decl.¶ 3)  Additionally, Plaintiff expects to rely on testimony

18  of actual consumers who reside in northern California and who were confused as

19  a result of Defendants' misconduct.  This factor weighs strongly against transfer.

20  • **The Ease of Access to Evidence:**  Given the advances in technology, the ease

21  in access to documents does not weigh heavily in the motion to transfer analysis.

22  *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149

23  (C.D. Cal. 2009).  Specifically, technological advances have made it easy for

24  documents to be transferred to different locations.  *See id.*  Here, it is likely that

25  most—if not all—of the relevant documents will be in electronic form, easily

26  transferrable to different locations (e.g. emails, domain registration records,

27  website printouts, website code, and website statistics).  Moreover, Defendants

28  have submitted no evidence that they would possess more responsive evidence

than Plaintiff or California-based third parties, or that the burden on Defendants in producing that evidence would somehow be greater for Defendants than Plaintiff. Thus, this factor does not weigh in favor of transfer.

- **Familiarity of Each Forum with Applicable Law:**  While there is no doubt that the Eastern District of New York is familiar with federal trademark and cybersquatting law, it is worth noting that the Northern District of California has a unique knowledge base in this area of the law.  Because: a) Verisign, Inc. is located in this district, b) Verisign is the registry for all ".net" domain names, and c) the Lanham Act specifically provides for *in rem* jurisdiction in cybersquatting cases at the location of the registrar, the Northern District of California has developed robust jurisprudence regarding cybersquatting under the Lanham Act.  Because cybersquatting is at the core of Plaintiff's complaint, this factor weighs against transfer.

- **Feasibility of Consolidation with Other Claims:**  This factor does not apply to this action.

- **Any Local Interest in Controversy:**  The Northern District of California is the center of e-commerce and online business, and its economy is intertwined with Internet-related issues.  As a result, this district has a strong incentive to make e-commerce safe for both businesses and consumers.  Thus, this district has a significant interest in addressing any misuse of domain names to mislead consumers or otherwise cause confusion in northern California.   This factor weighs against transfer.

- **The Relative Congestion and Time to Trial:**  In 2009, 6,059 cases were filed in the Northern District of California and 6,021 were resolved.  (Rosenfeld Decl. ¶21 & Ex. S.)  In comparison, in 2009, 5,700 cases were filed in the Eastern District of New York and 5,268 were resolved.  (*Id.*)  Thus, the numbers of actions filed and terminated were similar between the two districts.  However, where a matter went to trial, the median time from filing until trial in 2009 was 24.5 months in the

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS/TRANSFER VENUE**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    Northern District of California versus 32.0 months in the Eastern District of New

2    York.  (*Id.* ¶22 & Ex. T.)  Thus, if this action goes to trial, the Eastern District of

3    New York would likely be a less efficient forum.  Thus, this factor weights against

4    transfer.

5        Because Plaintiff's choice of forum is entitled to considerable weight, and because

6    none of the relevant factors supports a transfer, this Court must deny Defendants'

7    motion.

8                                   **CONCLUSION**

9        For all of the reasons set forth above, the Court should deny Defendants' Motion

10   to Dismiss the complaint or in the Alternative Transfer Venue to the Eastern District of

11   New York.  To the extent there is any doubt as to Defendants' contacts with California,

12   the Court should allow jurisdictional discovery to assess the scope of transactions

13   Defendants have had with California residents.

14

15   DATED: May 26, 2010                    **KRONENBERGER BURGOYNE, LLP**

16

17                                          By: _____ s/ Karl S. Kronenberger _____

18                                                Karl S. Kronenberger

19                                          Attorneys for Plaintiff Digby Adler Group
                                            LLC *dba* Bandago

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS/TRANSFER VENUE**