IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGBY ADLER GROUP LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>IMAGE RENT A CAR, INC., and<br>VAN RENTAL CO., INC.,<br><br>    Defendants. | Case No. 10-617 SC<br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS OR<br>TRANSFER |

## I. INTRODUCTION

Plaintiff Digby Adler Group LLC ("Plaintiff") brought this action against Defendants Image Rent A Car, Inc. ("Image") and Van Rental Co., Inc. ("Van Rental") (collectively, "Defendants"), alleging cybersquatting, unfair competition, and false advertising under the Lahnam Act, as well as common law trademark infringement and violation of Section 17200 of California's Business and Professions Code. Docket No. 1 ("Compl.") Defendants have filed a Motion to Dismiss or Transfer Venue to the Eastern District of New York, which is now fully briefed. Docket Nos. 21 ("Mot."), 22 ("Opp'n"), 32 ("Reply"). Pursuant to Civil Local Rule 7-1(b), the Court finds the Motion suitable for determination without oral argument. For the following reasons, the Court DENIES Defendants' Motion.

///

**II. BACKGROUND**

Plaintiff is a California limited-liability company headquartered in San Francisco which rents cars and vans, with a focus on long-term rentals to touring music groups. Compl. ¶¶ 4, 10. Plaintiff operates rental locations in California, New Jersey, Illinois, and Oregon, and provides van rentals for use throughout the United States. Id. ¶ 11. Since 2003, Plaintiff has done business under the service mark "Bandago" ("the Mark"). Id. ¶ 12. Plaintiff filed an application to register the Mark with the U.S. Patent and Trademark Office in 2008, but a Certificate of Registration has not yet issued. Id. In 2003, Plaintiff registered the domain name bandago.com, and has since used it in connection with its van rental business. Id. ¶¶ 13-14.

Defendants are also in the business of renting vans, as well as other automobiles. Id. ¶ 15. Neither party clearly describes the relationship between Image and Van Rental, but both companies share a chief executive officer, Gad Sebag ("Sebag"), and both are New York domestic business corporations, as well as foreign profit corporations authorized to do business in New Jersey and Florida. Sebag Decl. at 1.[1] Defendants' primary place of business is Brooklyn, New York, and Defendants maintain rental offices in New York and Florida. Id. Defendants operate a website, Imagerentacar.com, which allows users to make vehicle reservations and pay for their rentals using a credit card. Compl. ¶ 17; Rosenfeld Decl. Ex. L ("Imagerentacar.com Payment Page").[2]

---

[1] Sebag filed a Declaration in support of Defendants' Motion. Docket No. 21-4.

[2] Jeffrey M. Rosenfeld ("Rosenfeld"), counsel for Plaintiff, filed a Declaration in support of Plaintiff's Opposition. Docket No. 23.

2

1    Plaintiff alleges that in August 2008, Van Rental, as an agent
2 of Image, registered the Internet domain name bandago.net. Id. ¶¶
3 18-21. Plaintiff claims that Defendants created a website at
4 bandago.net that redirects visitors to Imagerentacar.com. Id. ¶¶
5 18-21. Plaintiff alleges that Defendants had never before used the
6 "Bandago" name in commerce, and that Defendants used bandago.net
7 solely to divert Plaintiff's customers to Defendant. Id. ¶¶ 24,
8 25. Plaintiff claims it has received calls from confused
9 customers, and claims that some customers have used Defendants'
10 services rather than Plaintiff's. Id. ¶ 28.
11    Defendants argue that the Court lacks jurisdiction to hear the
12 case. Mot. at 1. Defendants claim that they have no rental
13 offices in California, have never done business in California, have
14 never entered into a contract with any entity in California, have
15 no employees in California, and do not advertise in California.
16 Sebag Decl. at 1-3. Defendants argue that although they operated
17 the bandago.net website, they did not use it to attract business in
18 California. Id. at 2. Defendants argue that because of this, the
19 Court lacks jurisdiction and venue is improper. Mot. at 2. In the
20 alternative, Defendants seek a transfer of the case to the Eastern
21 District of New York. Id.

### III. LEGAL STANDARD

#### A. Personal Jurisdiction

Where a court considers a motion to dismiss for lack of jurisdiction without an evidentiary hearing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.

3

1995) (citations omitted). Jurisdiction must comport with both the long-arm statute of the state in which the district court sits and the constitutional requirements of due process. Mattel, Inc., v. Greiner & Hausser GmbH, 354 F.3d 857, 863 (9th Cir. 2003). Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, courts may exercise jurisdiction to the extent permitted by the Due Process Clause of the Constitution. Panavision v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). The Due Process Clause allows federal courts to exercise jurisdiction where the defendant has had sufficient minimum contacts with the forum to subject him or her to the specific jurisdiction of the court. Id. at 1320.

**B. Venue**

The plaintiff has the burden of showing that venue is proper under 28 U.S.C. § 1391 or another statute, and a district court shall dismiss or transfer a case if venue is improper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). Even if venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

**IV. Discussion**

**A. Personal Jurisdiction**

Plaintiff argues that this Court may exercise personal jurisdiction over Defendants without violating the Due Process Clause of the United States Constitution. Opp'n at 4-5. The Ninth Circuit provides a three-part test to determine if jurisdiction comports with due process:

4

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

Panavision, 141 F.3d at 1320 (citation and quotation marks omitted). In order to satisfy the first prong of the test, the defendant must have either purposefully availed itself of the privilege of conducting business activities within the forum or purposefully directed activities toward the forum. Id.

Purposeful direction usually consists of actions outside the forum state that are directed at the forum, and applies to suits sounding in tort. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802-03 (9th Cir. 2004). Here, Plaintiff's claims are based in cybersquatting and trademark infringement, both generally characterized as torts, so purposeful direction analysis is appropriate. See Panavision, 141 F.3d at 1322. Purposeful direction exists when a defendant has committed an act outside of the forum state that was intended to and does in fact cause injury within the forum. Calder v. Jones, 465 U.S. 783, 788-89 (1984). Under Calder's "effects test," the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which causes harm that the defendant knows is likely to be suffered in the forum state. Id.; see also Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

An "intentional act" is an act by the defendant committed with the "intent to perform an actual, physical act in the real world,

5

rather than . . . intent to accomplish a result or consequence of that act." 606 F.3d at 1128. In Brayton Purcell, a law firm specializing in elder abuse law brought a suit against another law firm, claiming the defendant used the plaintiff's copyrighted materials on its website in an attempt to compete with the plaintiff for elder abuse clients. Id. at 1129. In that case, the defendant's intentional act was the posting of the plaintiff's copyrighted material on its website. Id. Here, because Defendants committed an intentional act when they used the bandago.net domain name to redirect users to the Imagerentacar.com website, this requirement is satisfied.

The "express aiming" prong requires that Defendants' conduct be expressly aimed at the forum. Id. While maintenance of a passive website alone cannot satisfy the express aiming prong, operating a passive website in conjunction with "something more -- conduct directly targeting the forum -- is sufficient to confer personal jurisdiction." Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002). Within the cybersquatting context, Panavision suggests that merely registering a domain name and linking it to a website does not alone constitute "express aiming." 141 F.3d at 1321. In Panavision, the "something more" was the defendant's scheme to obtain money from the plaintiff -- the plaintiff sent the defendant a cease-and-desist letter, and the defendant demanded $13,000 in exchange for the name. Id. at 1319.

Plaintiff claims that Defendants' website is highly interactive, allowing visitors to make car and van reservations using a credit card. Opp'n at 8. Plaintiff claims this

6

interactive website demonstrates the required "something more" -- namely, Defendants' competition with Plaintiff for California customers. Id. Plaintiff attaches print-outs of nineteen web pages from Defendants' website which they claim show Defendants advertised and rented to customers in California. Rosenfeld Decl. Exs. A-N ("Defendants' Web Pages"). In response, Defendants strenuously deny advertising or renting to California customers. Shenior Zilberman ("Zilberman"), Image's general manager, declares that the Imagerentacar.com website has more than 2790 pages and is constantly being edited and modified, and that the pages Plaintiff attaches were either produced in error or are taken out of context. Zilberman Decl. at 2-3.[3] Zilberman argues that many of the nineteen pages Plaintiff attaches do not state that Defendants serve California, but rather reference California in some other way, such as describing their vehicles as "California Vans" or offering "vans for long distance runs to California." Id. at 4 (emphasis added). Defendants admit that a California customer could make a reservation online, but the customer would have to travel to the East Coast to take possession of the car. Id. at 5.

Upon inspection of the Imagerentacar.com web pages, the Court finds that they strongly suggest Defendants only serve customers in Florida, New York, and the states neighboring New York. Each Imagerentacar.com web page shares a common header, which states, "New York - NJ - CT & DC | Florida." See Imagerentacar.com Web Pages. The footer on each page states: "This site is copyrighted by Image Vans for Rent New York Miami CT Newark JFK Airport NYC PA DC Orlando Florida." Id. The web pages provide two phone numbers,

---

[3] Zilberman filed a Declaration in support of Defendant's Motion. Docket No. 32-1.

one for service in the New York area, and another for service in Florida. E.g., Rosenfeld Decl. Ex. C. The numerous web pages Plaintiff cites to contain a great deal of text, most of which is incomprehensible nonsense likely so positioned as an attempt to optimize search engine results through "keyword stuffing." See Eric Goldman, Deregulating Relevancy in Internet Trademark Law, 54 Emory L.J. 507, 531 n.69 (Winter 2005) (describing "keyword stuffing" as a process in which web developers add repeated text with no relevance to the content they are publishing to websites in an attempt to improve search engine result rankings and thus increase web traffic). For these reasons, the Court finds that the Imagerentacar.com website alone, absent "something more," does not satisfy the "express aiming" requirement.

However, Defendants' use of the bandago.net website to directly compete with Plaintiff for customers, either in California or otherwise, does constitute "express aiming." In Brayton Purcell, the Ninth Circuit held that the "express aiming" prong was satisfied by the defendant's use of the copyrighted material to compete with plaintiff for clients in a small, specialized field. 606 F.3d at 1130. The court suggested that the location of the clients was immaterial, so long as the defendant individually targeted the plaintiff: "By plagiarizing Brayton Purcell's website verbatim, Recordon allegedly placed the two law firms in competition in the area of elder abuse law and created confusion among potential clients." Id. Here, Plaintiff and Defendant both compete for customers within the specialty market of long-term passenger van rental. Plaintiff alleges that Defendants' use of the bandango.net website led to confusion of its customers, in

8

1  California and elsewhere, and has attached sworn declarations from
2  its employees so stating. Docket Nos. 24-27 ("Pl.'s Employee
3  Decls."). Furthermore, Plaintiff alleges in its Complaint that
4  Defendants registered the bandango.net name knowing that Plaintiff
5  provided similar services under the Mark, knowing that Plaintiff's
6  principal place of business was in California, and knowing that
7  Defendants' actions would harm Plaintiff in California. Compl. ¶
8  29. Defendants have not denied these allegations.
9      Defendants allege that they do no business in California, and
10 thus do not compete with Plaintiff for California customers.
11 However, the Court reads Brayton Purcell to hold that the location
12 of the customers is irrelevant, as long as the plaintiff and
13 defendant are in direct competition, the defendant's alleged tort
14 was in furtherance of this competition, the defendant knew the
15 plaintiff resided in the forum state, and the defendant knew the
16 harm would be felt in the forum state. 606 F.3d at 1130-31.
17 Because all the above elements are alleged by Plaintiff and not
18 rebutted by Defendants, the express aiming prong is satisfied.
19     The third requirement of the effects test is that the
20 defendant must know that its conduct is likely to cause harm in the
21 forum. Id. at 1131. This element is satisfied when the
22 defendant's intentional act has "foreseeable effects" in the forum.
23 Id. Here, it was foreseeable that Plaintiff would be harmed by
24 Defendants' use of the bandango.net domain name, and that the harm
25 would occur in Plaintiff's principal place of business, California.
26     The Court thus finds that Defendants' activity is sufficient
27 to show purposeful direction. The Court also concludes that the
28 second and third requirements to exercise specific jurisdiction --

that the claims arise out of the defendants' forum-related activities and that exercise of jurisdiction is reasonable -- are met. Plaintiff's claims arise out of Defendants' forum-related activities -- the infringement of Plaintiff's mark. And because Defendants fail to specifically address the reasonableness prong in their Motion, a reasonableness analysis is unnecessary. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") For the above reasons, the Court finds that its jurisdiction extends to Defendants.

### B. Venue

Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." For the purposes of determining proper venue, a corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Both Defendants are corporations. See Sebag Decl. at 1. Thus, because they are subject to personal jurisdiction in the Northern District of California, the Northern District of California is a proper venue.

Defendants argue that even if venue is proper in the Northern District of California, the case should be transferred to the Eastern District of New York. Mot. at 6. 28 U.S.C. § 1404(a) gives the court discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211

10

F.3d 495, 498 (9th Cir. 2000) (citation and quotation marks omitted). In determining whether to transfer to another proper venue, the court considers a number of factors, including: (1) the plaintiff's choice of forum, which is given substantial weight if the chosen forum is the plaintiff's home forum, id.; (2) the convenience of the parties, Vu v. Ortho-McNeil Pharmaceutical, Inc., 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009); (3) the location of the witnesses, id.; (4) the ease of access to evidence, id.; and (5) the respective parties' contacts with the forum, Jones, 211 F.3d at 498.

Defendants argue first that the Eastern District of New York is a proper venue, both under 28 U.S.C. § 1391(b)(1) as the district in which Defendants reside and under 28 U.S.C. § 1391(b)(2) as the district in which a substantial part of the events giving rise to this action occurred. Mot. at 5-6. Plaintiff does not dispute that the Eastern District of New York is a proper venue.

### 1. Plaintiff's Choice of Forum

Plaintiff has made clear its preference for bringing the suit in the Northern District of California. Opp'n at 14-15. Plaintiff also argues that because the Northern District of California is its home forum, this preference should be given particularly strong weight. Id. at 15. The Court finds that this factor favors Plaintiff, and it will be given substantial weight.

### 2. Convenience of the Parties

Plaintiff argues that in either forum, a party will be mildly inconvenienced. Opp'n at 15. Defendants argue that because both parties have a rental office in the New York area, Plaintiff will

11

be less inconvenienced by transfer than Defendants will if the motion to transfer is denied. Mot. at 7. The Court finds this factor slightly favors Defendants.

### 3. Location of the Witnesses

Defendants argue that most of its party and non-party witnesses are located in the Eastern District of New York. Mot. at 7. Zilberman declares that he is a resident of Brooklyn, New York, and would testify at trial that he is the president of Adir Rent A Car ("Adir"), "the prior owner of the trademark Bandago since the early 1990's until 2008." Zilberman Decl. at 5-6. Similarly, Image's office manager, Chane Vilenkin ("Vilenkin"), declares that he is a resident of Brooklyn, New York, that he is a former employee of Adir, and that Adir is a prior owner of the mark. Vilenkin Decl. at 1-2.[4] Defendants also identify five non-party witnesses by name, and assert that these witnesses will testify to Defendants' past use of the mark. Zilberman Decl. at 5-6. Defendants note that these witnesses would be outside this Court's subpoena power under Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure. Mot. at 8.

The Court finds that Defendants' ability to prove prior use of the Mark in commerce will be critical to their defense, and will likely require the testimony of non-party witnesses beyond the reach of the Court's subpoena power. Nevertheless, because Rule 32(a)(4)(B) of the Federal Rules of Civil Procedure would permit the use of depositions of these witnesses at trial, Defendants will still be able to make their case in the Northern District of California. As such, this factor favors neither party.

---

[4] Vilenkin filed a Declaration in support of Defendants' Motion. Docket No. 32-2.

12

### 4. Ease of Access to Evidence

Plaintiff argues that "[g]iven the advances in technology, the ease in access to documents does not weigh heavily in the motion to transfer analysis." Opp'n at 16. The Court agrees.

### 5. Parties' Contacts with the Forum

As a California company headquartered in San Francisco, Plaintiff has substantial contacts with California. Defendants claim they have no contacts with California, although the Court has found otherwise. Defendants point out that both parties have extensive contacts with New York, and argue that New York is the "center of gravity" of the case. Mot. at 8. But Defendants must allege more than the appropriateness of an alternative forum to rebut Plaintiff's choice of the Northern District of California. The Court finds this factor favors neither party.

The Court finds that, in light of the above factors, transfer of venue to the Eastern District of New York would not best serve the interest of justice or the convenience of the parties.

## V. CONCLUSION

The Court finds that jurisdiction is proper over Defendants Image Rent A Car, Inc. and Van Rental Co., Inc., and transfer of the case would not serve the interest of justice. The Court thus DENIES Defendants' Motion to Dismiss or Transfer.

IT IS SO ORDERED.

Dated: July 20, 2010

                                      UNITED STATES DISTRICT JUDGE