Exhibit 11

**LEVI HUEBNER & ASSOCIATES, PC**
Levi Huebner (*pro hac vice*)
478 Malbone Street, Suite 100
Brooklyn, NY 11225
Telephone: (212) 354-5555

Attorneys for Defendants
IMAGE RENT A CAR INC. and VAN RENTAL CO., INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIGBY ADLER GROUP LLC,** | Case No. 3:10-cv-00617-SC |
| Plaintiff, | |
| vs. | **RESPONSE OF VAN RENTAL CO., INC.,TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
| **IMAGE RENT A CAR, INC.,** *et al.*, | |
| Defendants. | |

Defendant, Van Rental Co., Inc., ("Van") by its attorneys, Levi Huebner & Associates, set forth the following as and for its Response to Plaintiff's First Set of Interrogatories.

INTERROGATORY NO. 1:

IDENTIFY EACH PERSON that YOU are aware of who has knowledge of ANY facts that are relevant to ANY claim or defense in this action.

**Response:** Shneior Zilberman, Chanie Vilenkin, Menachem Sneerson, Chaim Lifsh, Rachamim Chudaitov, and Moshe Gotlieb.

INTERROGATORY NO. 2:

RESPONSE OF VAN TO PLAINTIFF'S FIRST
SET OF INTERROGATORIES

Ex.11 p.1

1       IDENTIFY ALL of YOUR employees since June 2008.

2  **Response:** Not applicable as Van has never had any employees.

3  INTERROGATORY NO. 3:

4       IDENTIFY ALL PERSONS responsible for creating, publishing, or maintaining

5  ANY website that has promoted YOUR goods or services at ANY time after June 2008.

6  **Response:** Not applicable because Van did not have a web site that promoted any

7  goods or services at any time after June 2008.

8  INTERROGATORY NO. 4:

9       IDENTIFY ALL PERSONS responsible for promoting or advertising YOUR goods,

10  services, and websites.

11  **Response:** Not applicable because Van did not promote or advertise its goods,

12  services and/or web site.

13  INTERROGATORY NO. 5:

14       IDENTIFY the date YOU first used the BANDAGO MARK in connection with

15  YOUR goods or services.

16  **Response:** Not applicable because Van never used the Bandago Mark in connection

17  with goods or services except as related to <bandago.net> as evidenced by Exhibit "2."

18  attached to Van's Response to Plaintiff's First Set of RFP's to Defendant Van.

19  INTERROGATORY NO. 6:

20       Describe in detail the process by which YOU first adopted the BANDAGO MARK

21  in ANY form.

22  **Response:** Not applicable because Van never adopted the Bandago Mark in any form

23  except as related to <bandago.net> as evidenced by Exhibit "2." attached to Van's

24  Response to Plaintiff's First Set of RFP's to Defendant Van.

25  INTERROGATORY NO. 7:

26       IDENTIFY ALL computers, INCLUDING without limitation personal computers,

27  network servers, and/or ANY hard drives, in YOUR possession, custody, or control, likely

28  to contain DOCUMENTS REGARDING this action.

Case No. 3:10-cv-00617-SC           1       **RESPONSE OF VAN TO PLAINTIFF'S FIRST**
                             **SET OF INTERROGATORIES**

1   **Response:** Defendant objects to this demand on the grounds that it is vague,

2   ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

3   information not reasonably calculated to lead to the discovery of admissible evidence.

4   However, Defendant Responds over objection without waiving same, Van Responds as

5   follows: Not applicable because Van is not in possession, custody, or control, of any

6   computers, including without limitation personal computers, network servers, and/or any

7   hard drives likely to contain DOCUMENTS REGARDING this action.

8   Defendant reserves the right to amend and/or supplement the Responses

9   contained herein up to and including the time of trial and as when any new and/or further

10  information becomes known.

11

12  DATED:  December 2, 2010

13                                         LEVI HUEBNER & ASSOCIATES, PC

14

15                                         BY:/s/ Levi Huebner
                                              Levi Huebner
16

17                                         Attorneys for Defendants
                                           IMAGE RENT A CAR INC. and VAN
18                                         RENTAL CO., INC.

19

20                                         TO: **KRONENBERGER BURGOYNE, LLP**
                                           Jeffrey M. Rosenfeld
21                                         150 Post Street, Suite 520
                                           San Francisco, CA 94108
22                                         Telephone: (415) 955-1155
                                           Facsimile:  (415) 955-1158
23                                         karl@KBInternetLaw.com
                                           jeff@KBInternetLaw.com
24

25                                         Attorneys for Plaintiff Digby Adler Group
                                           LLC., *dba* Bandago
26

27

28

Exhibit 12

1

2  **KRONENBERGER BURGOYNE, LLP**

   Karl S. Kronenberger (Cal. Bar No. 226112)
3  Jeffrey M. Rosenfeld (Cal. Bar No. 222187)
   150 Post Street, Suite 520
4  San Francisco, CA 94108
   Telephone:  (415) 955-1155
5  Facsimile:   (415) 955-1158
   karl@KBInternetLaw.com
6  jeff@KBInternetLaw.com

7  Attorneys for Plaintiff Digby Adler Group LLC
   *dba* Bandago

8

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10

11

12 **DIGBY ADLER GROUP LLC *DBA***          Case No. 3:10-cv-00617-SC
   **BANDAGO,** a California limited liability
13 company,

14          Plaintiff,                       **PLAINTIFF DIGBY ADLER GROUP**
                                             **LLC'S FIRST SET OF REQUESTS FOR**
15      **vs.**                              **PRODUCTION OF DOCUMENTS TO**
                                             **DEFENDANT IMAGE RENT A CAR,**
16                                           **INC.**
   **IMAGE RENT A CAR, INC.,** a New York
17 corporation, and **VAN RENTAL CO., INC.,** a  **[Pursuant to FRCP 34]**
   New York corporation,
18
            Defendants.
19

20

21

22

23

24

25

26

27

28

   Case No. 3:10-cv-00617-SC                  **PLAINTIFF'S FIRST SET OF RFPs TO**
                                              **DEFENDANT IMAGE RENT A CAR, INC.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

PROPOUNDING PARTY:  PLAINTIFF DIGBY ADLER GROUP LLC *DBA*

BANDAGO

RESPONDING PARTY:   DEFENDANT IMAGE RENT A CAR, INC.

SET NUMBER:          ONE


Plaintiff Digby Adler Group LLC *dba* Bandago, by and through its attorneys, hereby requests, pursuant to Federal Rules of Civil Procedure Rule 34, that Defendant Image Rent A Car, Inc. respond to the following Requests for Production of Documents ("Requests") within the time permitted by law.   These Requests are governed by the following Definitions and Instructions.

## DEFINITIONS

1.      "YOU" and "YOUR," as used herein mean and include Image Rent A Car, Inc. and ALL PERSONS acting on its behalf, including without limitation all past or present officers, directors, employees, representatives, consultants, partners, independent contractors, agents and attorneys, as well as any past or present predecessor, successor, parent, subsidiary, division or affiliate thereof, whether domestic or foreign and whether owned in whole or in part.

2.      "VAN RENTAL CO." as used herein, means and includes Defendant Van Rental Co., Inc., and ALL PERSONS acting on its behalf, including without limitation all past or present officers, directors, employees, representatives, consultants, partners, independent contractors, and/or agents and attorneys.

3.      "ADIR RENT A CAR" as used herein, means and includes Adir Rent A Car Inc. and ALL PERSONS acting on its behalf, including without limitation all past or present officers, directors, employees, representatives, consultants, partners, independent contractors, and/or agents and attorneys

4.      "DEFENDANT(S)," as used herein, means YOU and/or VAN RENTAL CO.

5.      "PLAINTIFF," as used herein, means Plaintiff Digby Adler Group LLC *dba* Bandago and ALL PERSONS acting on its behalf.

**PLAINTIFF'S FIRST SET OF RFPs TO DEFENDANT IMAGE RENT A CAR, INC.**

Ex.12 p.2

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   6.   "THIRD-PARTY," as used herein, means ANY PERSON other than

2   PLAINTIFF, VAN RENTAL CO., and YOU, including, without limitation and in the

3   broadest sense possible, customers, employees, or vendors.

4   7.   "PERSON" or "PERSONS," as used herein, means and includes ANY

5   individual, corporation, partnership, joint venture, firm, association, proprietorship,

6   agency, board, authority, commission, limited liability corporation (LLC), doing business

7   as (DBA), or other legal, business, or governmental entity.

8   8.   "BANDAGO MARK" shall mean the mark comprising the term BANDAGO,

9   and all confusingly similar permutations, combinations, and derivatives, including without

10   limitation the domain name <www.bandago.net>.

11   9.   "ANY" and "ALL" shall both be interpreted in the most inclusive light, and

12   shall include "ANY AND ALL."

13   10.   "DOCUMENT" or "DOCUMENTS" shall have the meaning ascribed to it by

14   Fed. R. Civ. Proc. R. 34 and to "writings" and "recordings" by Fed. R. Evid. 1001, and

15   shall include without limitation the original and each non-identical copy of any written,

16   printed, typed, recorded, computerized, electronic, taped, graphic or other matter, in

17   whatever form, in any medium, whether in final or draft, and include all Internet weblogs

18   and Internet user logs.

19   11.   "COMMUNICATION" or "COMMUNICATIONS" includes every manner and

20   means of disclosure, transfer, or exchange, and every discussion, conversation,

21   disclosure, transfer, or exchange of information, whether orally or by DOCUMENT.

22   COMMUNICATION may be embodied in ANY means or media, INCLUDING writing,

23   computer readable files, electronic mail, voicemail, digital recording, sound recording,

24   and video recording.

25   12.   "EACH" means each and every.

26   13.   The term "INCLUDING" as used herein is illustrative and is in no way a

27   limitation on the information requested.

28   14.   "REGARDING" shall be construed in the broadest sense and shall mean

and include: concerning, alluding to, responding to, referring to, connected with, commenting on, summarizing, with respect to, pertaining to, about, regarding, discussing, involving, showing, referring, describing, reflecting, analyzing, evidencing, comprising, constituting, containing, embodying, mentioning, consisting of, or otherwise relating to the subject matter.

15.    "IDENTIFY" means to describe and delineate with detail and specificity, INCLUDING, without limitation, providing ALL background and contextual information relevant thereto.

a.    When used with reference to a natural PERSON, "IDENTIFY" means to state his/her full name, his/her job title and employer at the time referred to, his/her last known job title and employer, and his/her last known residence and business addresses and phone numbers.

b.    When used with reference to an entity PERSON, "IDENTIFY" means to state its full name, title, employer, phone number, and address.

c.    When used in reference to a DOCUMENT, "IDENTIFY" means to state the date, author (or, if different/applicable, signatories), the type of DOCUMENT (e.g., letter, memorandum, etc.), the PERSON who sent and the PERSON receiving the DOCUMENT, the company and/or individual having possession of the DOCUMENT, and all other specifics necessary to IDENTIFY the DOCUMENT with sufficient particularity. If ANY DOCUMENT was, but is no longer, in YOUR possession or subject to YOUR control, state what disposition was made of it and the reasons for such disposition.

16.    As used herein, the singular form of a noun or pronoun will include within its meaning the plural form of a noun or pronoun, and vice versa: the use of the masculine form of a pronoun will include within its meaning the feminine form of the pronoun, and vice versa; the use of the tense of any verb will include all other tenses of the verb so used; the use of "and" will include "or" and vice versa.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

3

Ex.12 p.4

**PLAINTIFF'S FIRST SET OF RFPs TO DEFENDANT IMAGE RENT A CAR, INC.**

**INSTRUCTIONS**

1.      These Requests encompass ALL DOCUMENTS and tangible items of ANY nature that are now or have at ANY time been within YOUR care, custody, or control. Each DOCUMENT shall be produced in its original file folder, file jacket, or cover, and as it is kept in the usual course of business.  When a Request does not specifically request a particular fact, but such a fact is necessary in order to make the answer to the Request comprehensible, complete, or not misleading, such a fact shall be included as part of the answer and the Request shall be deemed specifically to request such fact.

2.      Unless impracticable, produce ALL DOCUMENTS in their original medium and form.

3.      If YOU contend that ANY DOCUMENT or item encompassed by ANY Request is privileged, in whole or in part, or otherwise object to its production, then with respect to EACH such DOCUMENT or item:

a.  State with specificity the reason or reasons for YOUR objection and/or the nature of ANY privilege asserted;

b.  State the name and address of each PERSON having knowledge of the factual basis, if any, upon which the privilege or other objection is asserted; and

c.  With respect to DOCUMENTS, specify:

       i.  The date of the DOCUMENT;

      ii.  The nature of the DOCUMENT (i.e., whether letter, telegram, memorandum, etc.);

    iii.  The name and address of each PERSON and entity who participated in the preparation of the DOCUMENT;

    iv.  The name and address of each PERSON and entity to whom the DOCUMENT, or a copy thereof, has been at ANY time provided;

     v.  The name and address of each PERSON and entity from

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

whom the DOCUMENT has been obtained by YOU;

vi.    The name and address of the PERSON or entity having possession of the original of the DOCUMENT (or if the whereabouts of the original is unknown, the name and address of each PERSON and entity known or believed to have a copy or copies thereof);

vii.    ALL other information necessary to IDENTIFY the DOCUMENT with sufficient particularity to meet the requirements for its inclusion in a motion for production pursuant to Fed. R. Civ. Proc. R. 34 37(a); and

viii.    If such DOCUMENT was, but is no longer, within YOUR care, custody, or control, state what disposition was made of it, the reason for that disposition, and the date upon which it was so disposed.

4.    These Requests are intended to cover ALL DOCUMENTS in YOUR possession, custody, or control, wherever located. If ANY responsive DOCUMENT was, but is no longer, in YOUR possession or subject to YOUR control, or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been disposed of in some other manner. In addition, where appropriate, set forth: (i) the content of said DOCUMENT; (ii) the location of any copies of said DOCUMENT; (iii) the date of such destruction; and (iv) the name of the PERSON who ordered or authorized such destruction.

5.    These Requests shall be deemed continuing in nature so as to require supplementary answers between the time answers are served and the time of trial, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Therefore, IF AND WHEN YOU OBTAIN ANY INFORMATION THAT MATERIALLY AFFECTS RESPONSE TO A REQUEST FOR PRODUCTION OF DOCUMENTS, INCLUDING INFORMATION AS TO THE CREATION OR RECEIPT OF NEW RECORDS OR DOCUMENTS, THE

1 | AFFECTED RESPONSE OR ANSWER SHALL BE DEEMED NO LONGER TRUE, AND

2 | YOUR FAILURE TO PROMPTLY SUPPLEMENT OR AMEND SUCH RESPONSE OR

3 | ANSWER SHALL BE DEEMED, IN SUBSTANCE, A KNOWING CONCEALMENT.

4

5 | **REQUESTS FOR PRODUCTION**

6 | **REQUEST NO. 1:**

7 | ALL DOCUMENTS supporting ANY of YOUR responses to Plaintiff Digby Adler

8 | Group LLC's First Set of Requests for Production of Documents to Defendant Image

9 | Rent A Car, Inc.

10 | **REQUEST NO. 2:**

11 | DOCUMENTS sufficient to evidence YOUR corporate formation and maintenance,

12 | INCLUDING but not limited to articles of incorporation, bylaws, charters, board of

13 | directors' minutes, and shareholder agreements.

14 | **REQUEST NO. 3:**

15 | ALL DOCUMENTS regarding YOUR registration of fictitious names in ANY

16 | geographic area in the United States.

17 | **REQUEST NO. 4:**

18 | DOCUMENTS sufficient to IDENTIFY ALL of YOUR employees since June 2008.

19 | **REQUEST NO. 5:**

20 | DOCUMENTS sufficient to IDENTIFY ALL of YOUR directors since June 2008.

21 | **REQUEST NO. 6:**

22 | DOCUMENTS sufficient to IDENTIFY ALL of YOUR shareholders since June

23 | 2008.

24 | **REQUEST NO. 7:**

25 | ALL DOCUMENTS REGARDING the relationship between YOU and VAN

26 | RENTAL CO.

27 | **REQUEST NO. 8:**

28 | DOCUMENTS sufficient to evidence every product and service YOU have offered

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFF'S FIRST SET OF RFPs TO
DEFENDANT IMAGE RENT A CAR, INC.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  since June 2008.

2  **REQUEST NO. 9:**

3  DOCUMENTS sufficient to IDENTIFY every domain name YOU have owned,

4  registered, or licensed since January 2007.

5  **REQUEST NO. 10:**

6  ALL DOCUMENTS REGARDING PLAINTIFF in YOUR possession, custody, or

7  control.

8  **REQUEST NO. 11:**

9  ALL DOCUMENTS REGARDING ANY transactions between YOU and ADIR

10  RENT A CAR.

11  **REQUEST NO. 12:**

12  ALL COMMUNICATIONS between YOU and ADIR RENT A CAR.

13  **REQUEST NO. 13:**

14  ALL COMMUNICATIONS between YOU and Menachem Sneerson.

15  **REQUEST NO. 14:**

16  ALL DOCUMENTS REGARDING the structure and ownership of ADIR RENT A

17  CAR.

18  **REQUEST NO. 15:**

19  ALL DOCUMENTS REGARDING ANY transactions between YOU and Menachem

20  Sneerson.

21  **REQUEST NO. 16:**

22  ALL DOCUMENTS REGARDING ANY transaction between ADIR RENT A CAR

23  and Menachem Sneerson.

24  **REQUEST NO. 17:**

25  ALL DOCUMENTS REGARDING ANY assignment or license of ANY trademarks

26  or trademark rights from ADIR RENT A CAR to Menachem Sneerson.

27  **REQUEST NO. 18:**

28  ALL DOCUMENTS REGARDING ANY assignment or license of ANY trademarks

1 | or trademark rights from Menachem Sneerson to YOU.

2 | **REQUEST NO. 19:**

3 |     ALL DOCUMENTS REGARDING YOUR use of the BANDAGO MARK.

4 | **REQUEST NO. 20:**

5 |     ALL DOCUMENTS REGARDING ANY THIRD PARTY'S use of the BANDAGO

6 | MARK.

7 | **REQUEST NO. 21:**

8 |     ALL DOCUMENTS REGARDING YOUR alleged trademark or intellectual property

9 | rights in the BANDAGO MARK.

10 | **REQUEST NO. 22:**

11 |     ALL DOCUMENTS REGARDING YOUR first use of the BANDAGO MARK.

12 | **REQUEST NO. 23:**

13 |     ALL DOCUMENTS REGARDING YOUR adoption of the BANDAGO MARK.

14 | **REQUEST NO. 24:**

15 |     DOCUMENTS sufficient to IDENTIFY EACH PERSON responsible for YOUR

16 | adoption or use of the BANDAGO MARK.

17 | **REQUEST NO. 25:**

18 |     ALL DOCUMENTS REGARDING ANY license of the BANDAGO MARK.

19 | **REQUEST NO. 26:**

20 |     ALL DOCUMENTS REGARDING ANY sale of the BANDAGO MARK.

21 | **REQUEST NO. 27:**

22 |     ALL agreements REGARDING the BANDAGO MARK.

23 | **REQUEST NO. 28:**

24 |     ALL DOCUMENTS REGARDING ANY continuity in YOUR use of the BANDAGO

25 | MARK, if ANY such continuity exists.

26 | **REQUEST NO. 29:**

27 |     ALL filings with governmental agencies (whether city, county, state, or national)

28 | REGARDING the BANDAGO MARK.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:10-cv-00617-SC

8

**PLAINTIFF'S FIRST SET OF RFPs TO DEFENDANT IMAGE RENT A CAR, INC.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   **REQUEST NO. 30:**

2        ALL DOCUMENTS REGARDING YOUR efforts to police the use of the

3   BANDAGO MARK.

4   **REQUEST NO. 31:**

5        ALL of YOUR advertisements that use or display the BANDAGO MARK.

6   **REQUEST NO. 32:**

7        ALL of YOUR marketing materials and promotional materials that use or display

8   the BANDAGO MARK.

9   **REQUEST NO. 33:**

10       DOCUMENTS sufficient to IDENTIFY every customer transaction for ANY good or

11  service sold in connection with the BANDAGO MARK.

12  **REQUEST NO. 34:**

13       DOCUMENTS sufficient to IDENTIFY the geographic location of every customer

14  transaction for ANY good or service sold in connection with the BANDAGO MARK.

15  **REQUEST NO. 35:**

16       ALL business cards that use or display the BANDAGO MARK.

17  **REQUEST NO. 36:**

18       ANY studies or surveys REGARDING YOUR use of the BANDAGO MARK.

19  **REQUEST NO. 37:**

20       ALL DOCUMENTS REGARDING the registration of the domain name

21  <www.bandago.net>.

22  **REQUEST NO. 38:**

23        ALL DOCUMENTS REGARDING YOUR acquisition of the domain name

24  <www.bandago.net>.

25  **REQUEST NO. 39:**

26       ALL DOCUMENTS REGARDING ANY transfer of the domain name

27  <www.bandago.net>.

28  //

**PLAINTIFF'S FIRST SET OF RFPs TO
DEFENDANT IMAGE RENT A CAR, INC.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**REQUEST NO. 40:**

ALL    DOCUMENTS    REGARDING    YOUR    use    of    the    domain    name <www.bandago.net>

**REQUEST NO. 41:**

ALL websites and web pages that YOU have created, published, or maintained in connection with the domain name <www.bandago.net>, INCLUDING without limitation ALL screenshots of ALL such web pages, whenever they appeared, and ALL COMMUNICATIONS REGARDING their appearance. This Request includes ALL drafts of such landing pages or subpages.

**REQUEST NO. 42:**

ALL landing pages to which the domain name <www.bandago.net> was ever redirected.

**REQUEST NO. 43:**

DOCUMENTS sufficient to evidence every product and service YOU offered in connection with ANY website associated with or redirected from the domain name <www.bandago.net>.

**REQUEST NO. 44:**

ALL DOCUMENTS containing website statistics for ANY website associated with or redirected from the domain name <www.bandago.net>, INCLUDING without limitation ALL DOCUMENTS showing the number of visitors, click-through rates, conversion rates, bounce rates, and number of impressions.

**REQUEST NO. 45:**

ALL DOCUMENTS REGARDING the geographic location of ALL visitors to ANY website associated with or redirected from the domain name <www.bandago.net>.

**REQUEST NO. 46:**

ALL DOCUMENTS REGARDING ANY confusion between PLAINTIFF, its services, its BANDAGO MARK, or its website on the one hand and DEFENDANTS, their services, their use of the domain name <www.bandago.net>, their use of the BANDAGO

**PLAINTIFF'S FIRST SET OF RFPs TO
DEFENDANT IMAGE RENT A CAR, INC.**

MARK, or their websites on the other hand.

**REQUEST NO. 47:**

ALL cease-and-desist letters and other legal demand letters received or directed to YOU.

**REQUEST NO. 48:**

DOCUMENTS sufficient to show the name and location of ALL consumers who made ANY type of purchase from ANY website associated with or redirected from the domain name <www.bandago.net>, INCLUDING without limitation the dates of such purchases and nature of the purchases.

**REQUEST NO. 49:**

ALL DOCUMENTS REGARDING ANY consumer complaint about YOU or YOUR goods or services.

**REQUEST NO. 50:**

ALL of YOUR profit and loss statements for the fiscal years 2007, 2008, 2009, and 2010.

**REQUEST NO. 51:**

ALL of YOUR balance sheets for the fiscal years 2007, 2008, 2009, and 2010.

**REQUEST NO. 52:**

ALL DOCUMENTS REGARDING ANY cost or expense identified in YOUR 2007, 2008, 2009, or 2010 profit and loss statement.

**REQUEST NO. 53:**

ALL of YOUR tax filings for the fiscal years 2007, 2008, 2009, and 2010.

**REQUEST NO. 54:**

DOCUMENTS sufficient to show YOUR marketing, advertising, and promotional expenditures REGARDING ANY website or web page associated with or redirected from the domain name <www.bandago.net>

**REQUEST NO. 55:**

ALL DOCUMENTS REGARDING revenues, profits, losses or assets for ADIR

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 3:10-cv-00617-SC

11

Ex.12 p.12

PLAINTIFF'S FIRST SET OF RFPs TO
DEFENDANT IMAGE RENT A CAR, INC.

1  RENT A CAR.

2  **REQUEST NO. 56:**

3  ALL DOCUMENTS REGARDING ANY search engine keywords used by YOU or

4  YOUR agents to drive or attempt to drive internet traffic to ANY website owned or

5  operated by YOU, whether such DOCUMENTS were prepared by YOU or by THIRD-

6  PARTIES (*e.g.* Internet search engines, marketing affiliates), INCLUDING without

7  limitation "Keyword Reports," "Placement/Keyword Reports," "Keyword Efficiency

8  Reports," and ANY other responsive reports available through accounts with internet

9  search engines allowing placement of sponsored link advertisements.

10  **REQUEST NO. 57:**

11  ALL DOCUMENTS REGARDING ANY COMMUNICATIONS between YOU and

12  PLAINTIFF.

13  **REQUEST NO. 58:**

14  ALL DOCUMENTS REGARDING ANY claim(s) against YOU for trademark and/or

15  copyright infringement, excluding claims made in the above-captioned lawsuit, and

16  excluding COMMUNICATIONS with counsel protected by the attorney-client privilege.

17

18  DATED:  July 29, 2010                    KRONENBERGER BURGOYNE, LLP

19

20                                                  By: _____

21                                                          Jeffrey M. Rosenfeld

22                                                  Attorneys for Plaintiff Digby Adler Group LLC
                                                    *dba* Bandago

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Exhibit 13

1
**LEVI HUEBNER & ASSOCIATES, PC**
2
Levi Huebner (*pro hac vice*)
478 Malbone Street, Suite 100
Brooklyn, NY 11225
3
Telephone: (212) 354-5555
4
Attorneys for Defendants
5
IMAGE RENT A CAR INC. and VAN RENTAL CO., INC.
6

7

8

9
**UNITED STATES DISTRICT COURT**
10
**NORTHERN DISTRICT OF CALIFORNIA**
11

12
**DIGBY ADLER GROUP LLC,**                    Case No. 3:10-cv-00617-SC
13
              Plaintiff,
                                              **RESPONSE OF IMAGE RENT A CAR,**
14
       vs.                                    **INC.,TO PLAINTIFFS FIRST SET OF**
                                              **REQUESTS TO FOR THE**
15
**IMAGE RENT A CAR, INC.,** *et al.,*         **PRODUCTION OF DOCUMENTS**
16
              Defendants.
17

18

19

20
       Defendant, Image Rent A Car, Inc., by its attorneys, Levi Huebner &

21
Associates, set forth the following as and for its Response to Plaintiff's First Set of

22
Requests for the Production of Documents.

23
REQUEST NO. 1:

24
       ALL DOCUMENTS supporting ANY of YOUR responses to Plaintiff Digby Adler

25
Group LLC's First Set of Requests for Production of Documents to Defendant Image

26
Rent A Car, Inc.

27
**Response:**   All Documents supporting answers are attached hereto as Exhibits "1."

28
through "9.".

1   REQUEST NO. 2:

2          DOCUMENTS sufficient to evidence YOUR corporate formation and maintenance,

3   INCLUDING but not limited to articles of incorporation, bylaws, charters, board of

4   directors' minutes, and shareholder agreements.

5   **Response:** Attached as **Exhibit "1."** is a copy of the filing receipt for Image Rent A

6   Car, Inc. and a copy of the "Corporate Records" containing bylaws, charters, board of

7   directors' minutes, and shareholder agreements for Image Rent A Car, Inc. ("Image")

8   REQUEST NO. 3:

9          ALL DOCUMENTS regarding YOUR registration of fictitious names in ANY

10  geographic area in the United States.

11  **Response:**   Not applicable because Image Rent A Car, Inc. has not operated under any

12  fictitious names in ANY geographic area in the United States has no documents

13  regarding same.

14  REQUEST NO. 4:

15         DOCUMENTS sufficient to IDENTIFY ALL of YOUR employees since June 2008.

16  **Response:** Attached as **Exhibit "2."** Is a copy of a Quarterly Combined Wage

17  Withholding – Attachment identifying employees of Image Rent A Car, Inc.

18  REQUEST NO. 5:

19         DOCUMENTS sufficient to IDENTIFY ALL of YOUR directors since June 2008.

20  **Response:**   Not applicable because Image Rent A Car, Inc. does not have a Board of

21  Directors.

22  REQUEST NO. 6:

23         DOCUMENTS sufficient to IDENTIFY ALL of YOUR shareholders since June

24  2008.

25  **Response:**   Attached as **Exhibit "3."** is a copy of the NYS Department of State Division

26  of Corporations Entity Information for Image Rent A Car, Inc. Identifying Gad Sebag

27  incorrectly denominated as "Gao Sebaf" as its CEO.

28

1   REQUEST NO. 7:

2       ALL DOCUMENTS REGARDING the relationship between YOU and VAN

3   RENTAL CO.

4   **Response:**   Not Applicable because there is no relationship between Van and Image.

5   REQUEST NO. 8:

6       DOCUMENTS sufficient to evidence every product and service YOU have offered

7   since June 2008.

8   **Response:**   Attached as **Exhibit "4."** Is a copy of the business card evidencing that

9   Image offers the rental of cars and vans.

10  REQUEST NO. 9:

11      DOCUMENTS sufficient to IDENTIFY every domain name YOU have owned,

12  registered, or licensed since January 2007.

13  **Response:**   Defendant Image objects to this demand on the grounds that it is vague,

14  ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

15  information not reasonably calculated to lead to the discovery of admissible evidence.

16  REQUEST NO. 10:

17      ALL DOCUMENTS REGARDING PLAINTIFF in YOUR possession, custody, or

18  control.

19  **Response:**   Not applicable because other than "Cease and Desist" letter attached as

20  Exhibit "6." Image does not in possession of any documents regarding Plaintiff.

21  REQUEST NO. 11:

22      ALL DOCUMENTS REGARDING ANY transactions between YOU and ADIR

23  RENT A CAR.

24  **Response:**   Not applicable because there were never any transactions between Image

25  and ADIR RENT A CAR.

26

27

28

1  REQUEST NO. 12:

2        ALL COMMUNICATIONS between YOU and ADIR RENT A CAR.

3  **Response:**  Not applicable because there were never any communications between

4  Image and ADIR RENT A CAR.

5  REQUEST NO. 13:

6        ALL COMMUNICATIONS between YOU and Menachem Sneerson.

7  **Response:**  Not applicable because there no documents in possession of Image

8  reflecting any communications between Image and Menachem Sneerson.

9  REQUEST NO. 14:

10        ALL DOCUMENTS REGARDING the structure and ownership of ADIR RENT A

11  CAR.

12  **Response:**  Not applicable because Image is not in possession or control of such

13  documents and Image has never had a relationship with ADIR RENT A CAR.

14  REQUEST NO. 15:

15        ALL DOCUMENTS REGARDING ANY transactions between YOU and Menachem

16  Sneerson.

17  **Response:**  Not applicable because there were never any transactions between Image

18  and Menachem Sneerson.

19  REQUEST NO. 16:

20        ALL DOCUMENTS REGARDING ANY transaction between ADIR RENT A CAR

21  and Menachem Sneerson.

22  **Response:**  Not applicable because Image is not in possession or control of any

23  documents reflecting any transaction between ADIR RENT A CAR and Menachem

24  Sneerson.

25  REQUEST NO. 17:

26        ALL DOCUMENTS REGARDING ANY assignment or license of ANY trademarks

27  or trademark rights from ADIR RENT A CAR to Menachem Sneerson.

28  **Response:**  Not applicable because Image is not in possession or control of any

1   documents reflecting any assignment or license of ANY trademarks or trademark rights
2   from ADIR RENT A CAR to Menachem Sneerson.

3   REQUEST NO. 18:

4       ALL DOCUMENTS REGARDING ANY assignment or license of ANY trademarks
5   or trademark rights from Menachem Sneerson to YOU.

6   **Response:**   Not applicable because Menachem Sneerson never assigned or licensed
7   any trademarks or trademark rights to Image.

8   REQUEST NO. 19:

9       ALL DOCUMENTS REGARDING YOUR use of the BANDAGO MARK.

10  **Response:**   Not applicable because Image never used the Bandago Mark.

11  REQUEST NO. 20:

12      ALL DOCUMENTS REGARDING ANY THIRD PARTY'S use of the BANDAGO
13  MARK.

14   **Response:** Not applicable because Image is not in possession or control of any
15  documents regarding any third party's use of the Bandago Mark.

16  REQUEST NO. 21:

17      ALL DOCUMENTS REGARDING YOUR alleged trademark or intellectual property
18  rights in the BANDAGO MARK.

19  **Response:**   Not applicable because Image does not claim and trademark or intellectual
20  property rights in the Bandago Mark.

21  REQUEST NO. 22:

22      ALL DOCUMENTS REGARDING YOUR first use of the BANDAGO MARK.

23  **Response:**   Not applicable because Image never used the Bandago Mark.

24  REQUEST NO. 23:

25      ALL DOCUMENTS REGARDING YOUR adoption of the BANDAGO MARK.

26  **Response:**   Not applicable because Image never adopted the Bandago Mark.

27  REQUEST NO. 24:

28      DOCUMENTS sufficient to IDENTIFY EACH PERSON responsible for YOUR

Case No. 3:10-cv-00617-SC

4

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP's

1  adoption or use of the BANDAGO MARK.

2  **Response:**  Not applicable for the reason stated in the Response of Image to "Request

3  No. 23." above.

4  REQUEST NO. 25:

5          ALL DOCUMENTS REGARDING ANY license of the BANDAGO MARK.

6  **Response:**  Not applicable because Image is not in possession or control of any

7  documents regarding the any license of the Bandago Mark.

8  REQUEST NO. 26:

9          ALL DOCUMENTS REGARDING ANY sale of the BANDAGO MARK.

10  **Response:**  Not applicable because Image is not in possession or control of any

11  documents regarding any sale of the Bandago Mark.

12  REQUEST NO. 27:

13          ALL agreements REGARDING the BANDAGO MARK.

14  **Response:**  Not applicable because Image is not in possession or control of any

15  documents reflecting agreements regarding the Bandago Mark.

16  REQUEST NO. 28:

17          ALL DOCUMENTS REGARDING ANY continuity in YOUR use of the BANDAGO

18  MARK, if ANY such continuity exists.

19  **Response:**  Not applicable because Image never claimed it had continuity in the use of

20  the Bandago Mark and Image is not in possession or control of any documents reflecting

21  continuity in the use of the Bandago Mark.

22  REQUEST NO. 29:

23          ALL filings with governmental agencies (whether city, county, state, or national)

24  REGARDING the BANDAGO MARK.

25  **Response:**  Not applicable because Image is not in possession or control of any

26  documents regarding any filings with governmental agencies of the Bandago Mark.

27  REQUEST NO. 30:

28          ALL DOCUMENTS REGARDING YOUR efforts to police the use of the

Case No. 3:10-cv-00617-SC

5

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP's

1  BANDAGO MARK.

2  **Response:**  Not applicable because Image never made any efforts to police the
3  Bandago Mark.

4  REQUEST NO. 31:

5     ALL of YOUR advertisements that use or display the BANDAGO MARK.

6  **Response:**  Not applicable because Image never advertised or displayed the Bandago
7  Mark.

8  REQUEST NO. 32:

9     ALL of YOUR marketing materials and promotional materials that use or display
10  the BANDAGO MARK.

11  **Response:**  Not applicable because marketing materials and promotional materials of
12  Image never used or displayed the Bandago Mark.

13  REQUEST NO. 33:

14     DOCUMENTS sufficient to IDENTIFY every customer transaction for ANY good or
15  service sold in connection with the BANDAGO MARK.

16  **Response:**  Not applicable because Image never used the Bandago Mark in connection
17  with any transaction for goods or services.

18  REQUEST NO. 34:

19     DOCUMENTS sufficient to IDENTIFY the geographic location of every customer
20  transaction for ANY good or service sold in connection with the BANDAGO MARK.

21  **Response:**  Not applicable because Image never had any customer regarding any
22  goods or services sold in connection with the Bandago Mark.

23  REQUEST NO. 35:

24     ALL business cards that use or display the BANDAGO MARK.

25  **Response:**  Not applicable because Image never had any business cards that used or
26  displayed the Bandago Mark and Image is not in possession or control of any business
27  cards that use or display the Bandago Mark.

28

1   REQUEST NO. 36:

2        ANY studies or surveys REGARDING YOUR use of the BANDAGO MARK.

3   **Response:**  Not applicable because Image never used the Bandago Mark and never

4   performed any studies or surveys regarding "image's use of the Bandago Mark.".

5   REQUEST NO. 37:

6        ALL   DOCUMENTS   REGARDING   the   registration   of   the   domain   name

7   <www.bandago.net>.

8   **Response:**  Not applicable because Image is not in possession or control of any

9   documents regarding the Bandago Mark.

10  REQUEST NO. 38:

11       ALL  DOCUMENTS  REGARDING  YOUR  acquisition  of  the  domain  name

12  <www.bandago.net>.

13  **Response:**  Not  applicable  because  Image  never  acquired  the  domain  name

14  <www.bandago.net>.

15  REQUEST NO. 39:

16       ALL   DOCUMENTS   REGARDING   ANY   transfer   of   the   domain   name

17  <www.bandago.net>.

18  **Response:**  Not  applicable  because  image  is  not  in  possession  or  control  of  any

19  documents regarding the transfer of the domain name <www.bandago.net>.

20  REQUEST NO. 40:

21       ALL   DOCUMENTS   REGARDING   YOUR   use   of   the   domain   name

22  <www.bandago.net>

23  **Response:**  Not  applicable  because  Image  never  used  the  Domain  name

24  <www.bandago.net>.

25  REQUEST NO. 41:

26       ALL websites and web pages that YOU have created, published, or maintained in

27  connection with the domain name <www.bandago.net>, INCLUDING without limitation

28  ALL  screenshots  of  ALL  such  web  pages,  whenever  they  appeared,  and  ALL

Case No. 3:10-cv-00617-SC

7

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP's

1  COMMUNICATIONS REGARDING their appearance. This Request includes ALL drafts
2  of such landing pages or subpages.

3  **Response:**  Not applicable because Image has never created, published, or maintained
4  websites or web pages in connection with the domain name <www.bandago.net>.

5  REQUEST NO. 42:

6      ALL landing pages to which the domain name <www.bandago.net> was ever
7  redirected.

8  **Response:**  Not applicable because Image is not in possession of the particular landing
9  page or lead capture page to which the domain name <www.bandago.net> was ever
10  redirected.

11  REQUEST NO. 43:

12      DOCUMENTS sufficient to evidence every product and service YOU offered in
13  connection with ANY website associated with or redirected from the domain name
14  <www.bandago.net>.

15  **Response:**     Not applicable because Image is not in possession or control of any
16  documents evidencing any product or service in connection with any website associated
17  with or redirected from the domain name <www.bandago.net>.

18  REQUEST NO. 44:

19      ALL DOCUMENTS containing website statistics for ANY website associated with
20  or redirected from the domain name <www.bandago.net>, INCLUDING without limitation
21  ALL DOCUMENTS showing the number of visitors, click-through rates, conversion rates,
22  bounce rates, and number of impressions.

23  **Response:** Attached as **Exhibit "5."** Is a copy of a page from reportmysite.com
24  reflecting badago.net which is the only document in possession or control of Image
25  regarding "Request No. 44".

26  REQUEST NO. 45:

27      ALL DOCUMENTS REGARDING the geographic location of ALL visitors to ANY
28  website associated with or redirected from the domain name <www.bandago.net>.

Case No. 3:10-cv-00617-SC

8

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP'S

1    **Response:** Not applicable because Image is not in possession or control of and has
2    never been in possession of any documents regarding "Request No. 45".

3    REQUEST NO. 46:

4        ALL DOCUMENTS REGARDING ANY confusion between PLAINTIFF, its
5    services, its BANDAGO MARK, or its website on the one hand and DEFENDANTS, their
6    services, their use of the domain name <www.bandago.net>, their use of the BANDAGO
7    MARK, or their websites on the other hand.

8    **Response:** Not applicable because Image is not in possession or control of and has
9    never been in possession or control of any documents regarding "Request No. 46".

10   REQUEST NO. 47:

11       ALL cease-and-desist letters and other legal demand letters received or directed
12   to YOU.

13   **Response:** Attached as **Exhibit "6."** Is the only "cease-and-desist" letter ever received
14   by or directed to Image.

15   REQUEST NO. 48:

16       DOCUMENTS sufficient to show the name and location of ALL consumers who
17   made ANY type of purchase from ANY website associated with or redirected from the
18   domain name <www.bandago.net>, INCLUDING without limitation the dates of such
19   purchases and nature of the purchases.

20   **Response:** Not applicable because Image is not in possession or control of and has
21   never been in possession or control of any documents regarding "Request No. 48".

22   REQUEST NO. 49:

23       ALL DOCUMENTS REGARDING ANY consumer complaint about YOU or YOUR
24   goods or services.

25   **Response:** Attached as **Exhibit "7."** Is the only document received and/or in
26   possession or control of Image regarding a complaint.

27

28

1  REQUEST NO. 50:

2      ALL of YOUR profit and loss statements for the fiscal years 2007, 2008, 2009, and

3  2010.

4  **Response:** Defendant objects to this demand on the grounds that it is vague,

5  ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

6  information not reasonably calculated to lead to the discovery of admissible evidence.

7  However, over objection without waiving same, Image Reponds as follows: Image is not

8  in possession or control of any profit and loss statements for the fiscal years 2007, 2008,

9  2009, and 2010.

10  REQUEST NO. 51:

11      ALL of YOUR balance sheets for the fiscal years 2007, 2008, 2009, and 2010.

12  **Response:** Defendant objects to this demand on the grounds that it is vague,

13  ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

14  information not reasonably calculated to lead to the discovery of admissible evidence.

15  However, over objection without waiving same, Image Reponds as follows: Image is not

16  in possession or control of any balance sheets for the fiscal years 2007, 2008, 2009, and

17  2010.

18  REQUEST NO. 52:

19      ALL DOCUMENTS REGARDING ANY cost or expense identified in YOUR 2007,

20  2008, 2009, or 2010 profit and loss statement.

21  **Response:** Defendant objects to this demand on the grounds that it is vague,

22  ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

23  information not reasonably calculated to lead to the discovery of admissible evidence.

24  However, over objection without waiving same, Image Reponds as follows: Image is not

25  in possession or control of any documents reflecting any cost or expense profit and loss

26  statement for the reasons stated in the Response of Image to "Request 50 and 51.".

27

28

1   REQUEST NO. 53:

2       ALL of YOUR tax filings for the fiscal years 2007, 2008, 2009, and 2010.

3   **Response:** Defendant objects to this demand on the grounds that it is vague,

4   ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

5   information not reasonably calculated to lead to the discovery of admissible evidence.

6   Moreover, Plaintiff is not entitled to same as Plaintiff never alleged in the Complaint that

7   Defendants profited from the alleged use of the Bandago Mark.

8   REQUEST NO. 54:

9       DOCUMENTS sufficient to show YOUR marketing, advertising, and promotional

10  expenditures REGARDING ANY website or web page associated with or redirected from

11  the domain name <www.bandago.net>.

12  **Response:**    Attached as **Exhibit "8."** is a copy of an invoice evidencing the

13  monthly marketing cost for the website <www. imagerentacar.com > the only website

14  know to Image which was ever been redirected from the domain name

15  <www.bandago.net>.

16  REQUEST NO. 55:

17      ALL DOCUMENTS REGARDING revenues, profits, losses or assets for ADIR

18  RENT A CAR.

19  **Response:**    Not applicable  because Image is not in possession or control of any

20  documents regarding ADIR RENT A CAR.

21  REQUEST NO. 56:

22      ALL DOCUMENTS REGARDING ANY search engine keywords used by YOU or

23  YOUR agents to drive or attempt to drive internet traffic to ANY website owned or

24  operated by YOU, whether such DOCUMENTS were prepared by YOU or by THIRD-

25  PARTIES (*e.g.* Internet search engines, marketing affiliates), INCLUDING without

26  limitation "Keyword Reports," "Placement/Keyword Reports," "Keyword Efficiency

27  Reports," and ANY other responsive reports available through accounts with internet

28  search engines allowing placement of sponsored link advertisements.

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP's

1  **Response:** Defendant objects to this demand on the grounds that it is vague,

2  ambiguous, overly broad, vexatious, unduly burdensome and seeks irrelevant

3  information not reasonably calculated to lead to the discovery of admissible evidence.

4  REQUEST NO. 57:

5      ALL DOCUMENTS REGARDING ANY COMMUNICATIONS between YOU and

6  PLAINTIFF.

7  **Response:** Attached as **Exhibit "9."** is an undated letter delivered by attorneys for

8  Plaintiff to Defendant Image purported to be from Sharky Laguana and addressed to Mr.

9  Sebag. Said letter being the only communication between Image and Plaintiff.

10 REQUEST NO. 58:

11     ALL DOCUMENTS REGARDING ANY claim(s) against YOU for trademark and/or

12 copyright infringement, excluding claims made in the above-captioned lawsuit, and

13 excluding COMMUNICATIONS with counsel protected by the attorney-client privilege.

14 **Response:** Not applicable because a claim has never been made against Image

15 regarding trademark and/or copyright infringement.

16

17

18

19

20

21

22

23

24

25

26

27

28     Defendant reserves the right to amend and/or supplement the Responses

RESPONSE OF IMAGE RENT A CAR , INC.
TO PLAINTIFF'S FIRST SET OF RFP's

1   contained herein up to and including the time of trial and as when any new and/or further

2   information becomes known.

3

4   DATED:  December 2, 2010

5                                                LEVI HUEBNER & ASSOCIATES, PC

6

7                                                BY:/s/ Levi Huebner
                                                      Levi Huebner
8
                                                 Attorneys for Defendants
9                                                IMAGE RENT A CAR INC. and VAN
                                                 RENTAL CO., INC.
10

11

12                                               TO: **KRONENBERGER BURGOYNE, LLP**
                                                 Jeffrey M. Rosenfeld
13                                               150 Post Street, Suite 520
                                                 San Francisco, CA 94108
14                                               Telephone:  (415) 955-1155
                                                 Facsimile:  (415) 955-1158
15                                               karl@KBInternetLaw.com
                                                 jeff@KBInternetLaw.com
16
                                                 Attorneys for Plaintiff Digby Adler Group
17                                               LLC., *dba* Bandago

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:10-cv-00617-SC

13                    RESPONSE OF IMAGE RENT A CAR , INC.
Ex.13 p.14            TO PLAINTIFF'S  FIRST SET OF RFP'S

EXHIBIT 1

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

FILING RECEIPT
=======================================================================

ENTITY NAME: IMAGE RENT A CAR INC.

DOCUMENT TYPE: INCORPORATION (DOM. BUSINESS)              COUNTY: KING

SERVICE COMPANY: ALCO CORPORATE SERVICES               SERVICE CODE: 56 *

=======================================================================

FILED:10/29/2004 DURATION:PERPETUAL   CASH#:041029000567 FILM #:041029000542

ADDRESS FOR PROCESS                                      EXIST DATE
---------------------                                    ----------
THE CORPORATION                                          10/29/2004
391 EMPIRE BLVD
BROOKLYN, NY 11225

REGISTERED AGENT
----------------

STOCK:          200 NPV



=======================================================================
FILER                       FEES      160.00  PAYMENTS      160.00
-----                       ----                            --------
                            FILING    125.00  CASH            0.00
GAD SEBAG                    TAX        10.00  CHECK           0.00
1236 41ST ST                CERT        0.00  CHARGE          0.00
                            COPIES      0.00  DRAWDOWN      160.00
BROOKLYN, NY 11218          HANDLING   25.00  BILLED          0.00
                                              REFUND          0.00
=======================================================================
                                              DOS-1025 (11/89)

Ex.13 p.16



# Minutes

## And

# By-Laws

## of

Incorporated Under the Laws of

# New York

# Corporate Records

Of

_____

Name of the Corporation

Copyright © 1995 ALCO Corporate Service, Inc.

# Minutes
# &
# By-Laws

## Of

## Incorporated Under the Laws of New York State



Brooklyn Bridge

WAIVER OF NOTICE OF SPECIAL MEETING

OF THE

BOARD OF DIRECTORS

OF

_____

WE, the undersigned, being all of the Directors, herby waive notice of a special meeting of the Board and consent to its being held on the date and time and at the place set forth below and do hereby waive all notice of any adjournments thereof.

WE do further consent that any and all lawful business may be transacted at such meeting or at any adjournments thereof as may be deemed advisable by the Directors present at such meeting.

Place of Meeting: _____

Date of Meeting: _____

Time of Meeting: _____

Purpose of Meeting: To approve election under Section 1362 of the Internal Revenue Code to be treated as a "small business corporation" for income tax purposes.

Dated: _____

_____
Director

_____
Director

_____
Director

# MINUTES OF SPECIAL MEETING

## OF THE

## BOARD OF DIRECTORS

## OF

_____

A special meeting of the Board was held on the date, time and at the place set forth in the written Waiver signed by all Directors, fixing such time and place, and affixed to the minutes of this meetinig.

All of the members of the Board being present, the meeting was called to order by the Chairman. The Chairman advised that all of the shareholders had executed Internal Revenue Form 2553 consenting to the election by the Corporation to be treated as a small business corporation for tax pruposes. He stated that the Corporation met all of the requirements for qualification and he recommended that such action be taken. Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the Corporation elected under the provisions of Section 1362 of the Internal Revenue Code to be treated as a small business corporation for income tax purposes; and it was further

RESOLVED, that the appropriate officers are hereby directed to take any and all action necessary to comply with all the requirements of the Internal Revenue Service for making such election.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the same was adjourned.

_____
Secretary

Approved:

_____
President

# DIRECTORS  MINUTES

## BY

### SOLE  DIRECTOR

#### OF

_____

The undersigned, being the sole director of the Corporation, hereby adopts the following resolutions:

(1)   **RESOLVED,** that the Corporation elected under the provisions of Section 1362 of the Internal Revenue Code to be treated as a small business corporation for income tax purposes; and it was further

(2)   **RESOLVED,**  that the appropriate officers are hereby directed to take any and all action necessary to comply with all of the requirements of the Internal Revenue Service for making such election.


Dated: _____


                                        _____
                                                    Director

# MEDICAL AND DENTAL
# REIMBURSEMENT PLAN

## I. Purpose of Plan

A.    To provide employees with an additional measure of financial security.

B.    To provide an inducement for employees to remain employed with the Company.

C.    To rpovide an incentive for new employees.

## II. Eligibility

All full-time employees who (a) have completed at least three years of service for the Company, (b) are not employed on a part-time or seasonal basis as defined by the Internal Revenue Service, (c) are not included in a collective bargaining unit covered by an agreement.

## III. Beneftis

The Company will reimburse all eligible employees for all medical and dental expenses up to the sum of $5000.00 in any fiscal year, which the employee and/or members of his immediate family (spouse and children) may incur, but shall not include expenses reimbursable under any other medical, dental or accidental insurance policy.

## IV. Submission of Proof

In order to qualify for reimbursement, proof of medical and dental expenses must be submitted during the fiscal year in which such expenses are incurred.

## V. Term of Plan

The Company reserves the right to terminate this Plan at any time and for any reason whatsoever, provded that expenses which are incurred prior to termination shall be reimbursed pursuant to the terms of this Plan.

## VI. Settlement of Questions

All questions arising in the interpretation of the Plan shall be determined by the President of the Company. Where reimbursement is claimed by the President, questions shall be resolved by the Board.

note:

Elimination of Union Eligible employees is not proper except in those instances in which an existing collective bargaining agreement provides for accident and health benefits negotiated between the Company and a Union in good faith.

# COMPLIANCE WITH I.R.S. REQUIREMENTS

## FOR

## A MEDICAL AND DENTAL REIMBURSSEMENT PLAN

In prior years medical and dental reimbursement plans we used extensively because of their tax advantages for key personnel.  Section 105(h) of the Internal Revenue Code now prohibits discrimination both as to eligibility and as to benefits in favor of officers, shareholders or highly compensated employees.  If a plan is treated as discriminatory by the I.R.S., the discriminatory portion would be included in the gross income of the employees so benefited.

Attached is a copy of a Plan, together with a special set of minutes adopting the plan and a form of agreemtn to be used for all employees.

The Tax Reform Act of 1986 introduced Internal Revenue Code Section 89 mandating a fair distribution of employee benefits and requires employers to perform extensive tests in order to certify to the equity of benefit plans.  It was subsequently amended by the Technical and Miscellaneous Revenue Act of 1988 and proposed regulations were issued on March 2,, 1989.  Both Section 89 and the proposed regulations have engendered a great deal of controversy.  As a result, the enforcement of Section 89 was postponed until January 1, 1990 for further consideration.

It now appears likely that Section 89 will be repleaded and a new Section 89 substituted.  The most recent bill was introduced by Senator Lloyd Bentsen on June 6, 1989.

At the present time the proposed regulations state that is any employer makes a "good faith and reasonable effort" to comply with the requirements of the statute and legislative history, the employer will be treated as having satisfied Code Section 89.

It is our judgment that the attached Plan will constitute a good faith and a reasonable effort to comply with Code Section 89 provided:

(a)     All employees are included; and

(b)     All employees are treated equally.

It is our recommendation that your tax advisor should be consulted before a medical and dental reimbursement plan is placed in effect.

# WAIVER OF NOTICE OF SPECIAL MEETING

## OF THE

## BOARD OF DIRECTORS

## OF

_____

WE, the undersigned, being all of the Directors, herby waive notice of a special meeting of the Board and consent to its being held on the date and time and at the place set forth below, and do hereby waive all notice of any adjournments thereof.

WE do further consent that any and all lawful business may be transacted at such meeting or at any adjournments thereof as may be deemed advisable by the Directors present at such meeting.

Place of Meeting: _____

Date of Meeting: _____

Time of Meeting: _____

Purpose of Meeting:   To approve a Medical and Dental
                      Reimbursement Plan.

Dated: _____

_____
Director

_____
Director

_____
Director

# MINUTES OF SPECIAL MEETING

## OF THE

## BOARD OF DIRECTORS

## OF

_____

A special meeting of the Board was held on the date, time and at the place set forth in the written Waiver signed by all Directors, fixing such time and place, and affixed to the minutes of this meetinig.

The meeting was called to order by the Chairman and a Medical and Dental Reimbursement Plan was reviewed. After discussion, upon motion duly made, seconded and carried, it was

**RESOLVED,** that the "medical and dental reimbursement plan" submitted by the chairman is hereby approved and adopted by this board and a copy of said plan was ordered annexed to the minutes of this meeting; and further

**RESOLVED,** that the appropriate officers are hereby authorized and directed to take such action as may be necessary to carry out the provisions of said plan.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the same was adjourned.

_____
                                    Secretary

Approved:

_____
        Chairman

## MEMORANDUM OF AGREEMENT

## MEDICAL AND DENTAL REIMBURSEMENT PLAN

To: _____                    (Date) _____

        (Executive)

      This Memorandum will serve to confirm the agreement between you and the Company with respect to its Medical and Dental Reimbursement Plan.

      1.    The Company has adopted a Medical Reimbursement Plan. Under the terms of the Plan, and for so long as the Plan remains in existence, the Company will reimburse you for reasonable medical and dental expenses up to the sum of $5000.00 in any fiscal year which you may incur for yourself and members of your immediate family, except those expenses which are covered by any medical, dental or accident insurance policy insuring you and/or members of your family.

      2.    To qualify for reimbursement under the Plan, you must submit proof to the Company of your medical and dental expenses, not later than the end of the fiscal year in which such expenses are incurred.

      3.    The Company has adopted the Plan upon the advice of counsel that such reimbursements to you will be deductible in computing the Corporation's taxable income under the Internal Revenue Code and under any applicable state tax act. If the Internal Revenue Service or the State Tax Department should disallow any of the medical or dental reimbursement in computing the Company's taxable income, you agree to reimburse the Company (upon demand) for all medical and dental expenses disallowed.

      4.    The Company shall have the right, at any time and for any reason whatsoever, to terminate the Plan, however, any expenses incurred by you for yourself or for members of your immediate family prior to such termination shall be reimbursed to you pursuant to the terms of this Agreement.

      5.    This Agreement shall be binding upon and shall insure to the benefit of the parties hereto and their personal representatives, sucessors and assigns. It may not be modified, except by a writing signed by the parties.


Agreed to:                                          _____
                                                                (Name of Company)


_____                By _____
     (Employee)                                                     (President)

# TABLE OF CONTENTS

Corporate Tickler

Action in Writing of the Incorporator(s)

Minutes of Organizational Meeting by Sole Director Without a Meeting

Minutes of the Organizational Meeting of the Directors

Waiver of Notice

Articles of Incorporation (No Blank Page--INSERT)

Filing Receipt (INSERT)

Specimen Certificate

Ratification of Shareholders

By-Laws

Shareholder's Annual Meeting

Waiver of Notice

Oaths of Inspectors

Proxy

Regular Meeting of Directors

Waiver of Notice

Special Meeting of Directors

Waiver of Notice

Stock Certificates

Transfer Ledger

# CORPORATE TICKLER

| | | |
|---|---|---|
| Annual Meeting Date | | Fiscal Year End |
| Corporate Name | Phone | Principal Address |
| Assigned Attorney | | State                          Zip |
| Registered Agent | Phone | Agent's Address |
| Contact | Phone | State                          Zip |
| Accountant | | Accountant's Address |
| Assinged Accountant | Phone | State                          Zip |

| Shareholder | Shares | Phone | Address |
|---|---|---|---|
| Shareholder | Shares | Phone | Address |
| Shareholder | Shares | Phone | Address |
| Shareholder | Shares | Phone | Address |

| Director (Chairman) | Term | Phone | Address |
|---|---|---|---|
| Director | Term | Phone | Address |
| Director | Term | Phone | Address |
| Director | Term | Phone | Address |
| Director | Term | Phone | Address |

| | | |
|---|---|---|
| President | Phone | Address |
| Vice-President | Phone | Address |
| Secretary | Phone | Address |
| Treasurer | Phone | Address |

Minutes to be Completed

| Type | Date | Type | Date | Type | Date |
|---|---|---|---|---|---|
| Type | Date | Type | Date | Type | Date |
| Type | Date | Type | Date | Type | Date |

Location of Minutes and Seal

# BY-LAWS

## - OF -

_____

Certified a true and correct  copy of the By-laws
of the Corporation, adopted by the Incorporator
_____without a Meeting
on  _____, 19____.


- - - - - - - - - - - - - - - - - - - - - - - - - -
                                    Secretary

# ARTICLE 1

## MEETING OF SHAREHOLDERS

**SECTION 1.**      **Annual Meeting**. The Annual Meeting of the Shareholders of the Corporation shall be held on _____, in each year after the close of the Fiscal Year of the Corporation, or if a legal holiday, on the next secular day, or such date and hour as may be fixed by the Board of Directors and for the transaction of such business as may properly be brought before such meeting.

**SECTION 2.**      **Special Meetings**. Special Meetings of the Shareholders of the corporation may be held at any time in the interval before Annual Meetings. Special Meetings may be called by the President, or by request of a majority of the Board of Directors, or by the Secretary upon the written request of the holders of not less than twenty-five percent (25%) of the shares of stock outstanding and entitled to vote, such written request shall state the purpose or purposes of the Meeting and matters proposed to be acted upon reasonably estimated cost of preparing and mailing notices of such meeting. Nothing contained herein shall limit the right and power of Directors and Shareholders to require a Special Meeting for the election of Directors pursuant to Section 603 of the New York Business Corporation Law, as that Section may from time to time be amended.

**SECTION 3.**      **Place of Meetings**. Annual and Special Meetings of the Shareholders of the Corp-oration shall be held at the principal office of the Corporation or at such other place within or without the State of New York as the Board of Directors may from time to time determine.

**SECTION 4.**      **Notice of Meetings**. Written or printed notice of the time and place and purpose or purposes of all meetings of the Shareholders shall be given personally, or by first class mail, not less than ten (10) days nor more than fifty (50) days before the day fixed for the meeting, to each Shareholder entitled to vote at said meeting, and such notice must indicate that it is being issued by or at the direction of the person or persons calling the meeting. Such notice must also be given to any Shareholder who, by reason of any action proposed at such meeting, would be entitled to have his stock appraised, if such action were taken, and such notice must specify the proposed action and state the fact that if the action is taken, the dissenting Shareholder shall have all of the appraisal rights as such rights are set forth in Section 623 of the New York Business Corporation Law. Such notice shall be given to the Shareholder by leaving the same with him at his residence or usual place of business or by mailing it, certified mail, return receipt requested, postage prepaid and addressed to him at his address as it appears on the books of the Corporation, unless he shall have filed with the Secretary of the Corporation a written request that such notices intended for him be mailed to some other address, in which event it shall be mailed to the address designated in such request. Notices of every Annual and Special meeting shall state the place, day, hour and purpose or purposes of such meeting; and, in case of any Special Meeting, no business shall be acted upon which has not been stated in the notice of the meeting. The notices, as provided for in this Section, are not required to be given to any shareholder who submits a signed written waiver of notice, in person or by proxy, whether before or after the meeting. The attendance of any Shareholder at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by him. No notice of an adjourned meeting of Shareholders need be given, unless the Board of Directors fixes a new record date for the adjourned meeting.

**SECTION 5.**      **Record Dates**. For the purposes of determining the Shareholders entitled to notice of or to vote at a Shareholders' meeting or any adjournment thereof, the Board of Directors may fix a date of record which shall not be more than fifty (50) days nor less than ten (10) days before said meeting date. For the purpose of determining Shareholders entitled to express consent to or dissent from any proposal without a meeting, or for determining Shareholders entitled to receive payment of a dividend or the allotment of any rights, or for any other action, the Board of Directors may fix a date of record which shall not be more than fifty days prior to such action.

**SECTION 6.**      **Quorum.** At all meetings of Shareholders, except as otherwise provided by law, in order to constitute a quorum, there shall be present in person or represented by proxy, Shareholders owning a majority in number of the shares of the Corporation issued and outstanding and entitled to vote thereat; but if there be no quorum, the holders of such shares so present or represented may by majority vote adjourn the meeting from time to time, but not for a period of over thirty (30) days at any one time, without notice other than by announcement at the meeting, until a quorum shall attend. At any such adjournment of the meeting, at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally called. When a quorum is once present, it is not broken by the subsequent withdrawal of any Shareholder.

**SECTION 7.**      **Voting.** At all meetings of the Shareholders, each Shareholder, entitled to vote thereat, may vote in person or by proxy, and shall have one (1) vote for each share standing in his name on the books of the Corporation, unless otherwise provided in the Certificate of Incorporation or any amendments thereto. Upon demand of the Shareholders holding ten percent (10%) in interest of the shares, present in person or by proxy, and entitled to vote, voting shall be by ballot. A plurality of votes cast shall be sufficient to elect Directors, and a majority of votes cast shall be sufficient to take any other corporate action, except as otherwise provided by law, or these By-Laws.

**SECTION 8.**      **Proxies.** Every proxy shall be in writing, signed by the Shareholder or his duly authorized attorney and dated. No proxy which is dated more than eleven (11) months before the meeting at which it is offered shall be accepted unless such proxy shall, on its face, name a longer period for which it is to remain in force.

**SECTION 9.**      **Conduct of Meetings.** Meetings of the Shareholders shall be presided over by the President of the Corporation, or in his absence, by the Chairman of the Board of Directors, if any, or in the absence of both of them, by an Executive Vice President, if any, or in the absence of all such officers, by a Chairman to be chosen at the Meeting. The Secretary of the Corporation shall act as Secretary of the Meeting, if present.

**SECTION 10.**      **Action Without a Meeting.** Whenever Shareholders are required or permitted to take any action by vote, such action may be taken without a meeting on written consent, setting forth the action so taken, signed by the holders of all outstanding shares entitled to vote thereon. Such written consent shall have the same effect as a unanimous vote of Shareholders.

## ARTICLE II

## BOARD OF DIRECTORS

**SECTION 1.**      **Election and Powers:** The Board of Directors shall have, and be responsible for, the management and control of the affairs and business of the Corporation. The Directors shall be elected by the Shareholders at each annual meeting of Shareholders and each Director shall serve until his successor is elected or appointed and qualified, unless his directorship be theretofore vacated by resignation, death, removal or otherwise.

**SECTION 2.**      **Number.** The number of Directors constituting the entire Board of Directors shall be such number, not less than three (3) as shall be designated by resolution of the Board of Directors adopted prior to the election of Directors at the Annual Meeting of Shareholders. In the absence of such resolution the number of Directors to be elected at such Annual meeting shall be the number last fixed by the Board of Directors. Any Board action designating a change in the number of directors shall require a vote of a majority of the entire Board. The "entire Board" as used in this Article shall mean the total number of Directors which the Corporation would have if there were no vacancies. Notwithstanding the provisions of this Section, where all of the shares of the Corporation are owned beneficially and of record by less than three (3) Shareholders, the number of Directors may be less than three (3) but not less than the number of Shareholders.

**SECTION 3.**   **Vacancies.**  Vacancies in the Board of Directors (including any resulting from an increase in the number of Directors) created for any reason except the removal by the Shareholders of a Director or Directors, may be filled by vote  of the Board of Directors.  If, however, the number of Directors then in office is less than a quorum, vacancies may be filled by a vote of a majority of the Directors then in office.  Successor Directors elected under this Section shall hold office for the unexpired portion of the term of the Director whose place is vacant.  In the event of an increase in the number of Directors, additional Directors elected under this Section shall hold office until their successors have been duly elected or appointed and qualified.

**SECTION 4.**   · **Removal.**  At any meeting of the Shareholders duly called, any Director may, by vote of the holders of a majority of the shares entitled to vote in the election of Directors, be removed from office, with or without cause, and another may be elected by such Shareholders in the place of the Director so removed, to serve for the remainder of the term.

**SECTION 5.**   **Meetings.**  Regular Meetings of the Board of Directors shall be held at such times as the Directors may from time to time determine.  Special Meetings of the Board of Directors shall be held at any time, upon call from the Chairman of the Board, the President or of at least one-third (1/3) of the Directors.

**SECTION 6.**   **Place of Meetings.**  Regular and Special meetings of the Board of Directors shall be held at the principal office of the Corporation or at such other place, within or without the State of New York, as the Board of Directors may from time to time determine.

**SECTION 7.**   **Notice of Meeting.**  Notice of the place, day and hour of every regular and special meeting shall be given to each Director by delivering the same to him personally or sending the same to him by telegraph or leaving the same at his residence or usual place of business, at least one (1) day before the meeting, or shall be mailed to each Director, postage prepaid and addressed to him at the last known Post Office address according to the records of the Corporation, at least three (3) days before the meeting.  No notice of any adjourned meeting of the Board of Directors need to be given other than by announcement at the meeting, subject to provisions of Section 9 of this Article.

**SECTION 8.**   **Waiver of Notice.**  Notice of a meeting need not be given to any Director who submits a signed written waiver thereof whether before, during or after the meeting, nor to any Director who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to him.

**SECTION 9.**   **Quorum.**  A majority of the entire Board of Directors shall be necessary to constitute a quorum for the transaction of business at each meeting of the Board of Directors; but if at any meeting there be less than a quorum present, a majority of those present may adjourn the meeting, until a quorum shall attend.  At any such adjournment, at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally called.

**SECTION 10.**   **Action Without a Meeting.**  Any action required or permitted to be taken by the Board of Directors or any committee thereof at a duly held meeting may be taken without a meeting if all members of the Board of Directors or the committee consent in writing to the adoption of a resolution authorizing the action.  Such resolution and the written consents thereto by the members of the Board of Directors or committee shall be filed with the minutes of the proceedings of the Board of Directors or the committee.

**SECTION 11.**   **Personal Attendance by Conference Communication Equipment.**  Any one or more members of the Board of Directors or any committee thereof may participate in a meeting of such Board or committee by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time.  Participation by such means shall constitute presence in person at the meeting.

**SECTION 12.**   **Compensation.** Directors as such shall not receive any stated compensation for their services, but by resolution of the Board of Directors a fixed sum and expenses of attendance may be allowed for attendance at each special or regular meeting thereof. Nothing in this section will be construed to preclude a Director from serving the Corporation in any other capacity from receiving compensation therefor.

**SECTION 13.**   **Executive Committee and Other Committees.** The Board of Directors may, in its discretion, by an affirmative vote of a majority of the whole Board of Directors appoint an Executive Committee, or any other committee, to consist of three (3) or more Directors as the Board of Directors may from time to time determine. The Executive Committee shall have and may exercise between meetings of the Board of Directors all the powers of the Board of Directors in the management of the business and affairs of the Corporation, and other committees shall have those powers conferred upon them by the Board of Directors, except that no committee shall have power:

(a)   To recommend to Shareholders any action requiring Shareholder approval.

(b)   To fill vacancies in the Board of Directors or in any committee thereof;

(c)   To fix compensation of Directors for service on the Board of Directors or any committee thereof;

(d)   To repeal, amend or adopt by-laws;

(e)   To amend or repeal any Board of Directors resolution which does not by its terms, make it amendable or repealable by such committee;

(f)   To remove, or fix the compensation of, officers who are elected by the Board of Directors.

In the absence of any member of the Executive committee or of any other committee, the members thereof present at any meeting may appoint a member of the Board of Directors previously designated by the Board of Directors as a committee alternate to act in place of such absent member. The Board of Directors shall have the power at any time to change the committee, to fill vacancies in it, or dissolve it. The Executive and any other committee may make rules for the conduct of its business, and may appoint such committees and assistants as may from time to time be necessary, unless the Board of Directors shall provide otherwise. A majority of the members of the Executive Committee and of any other committee shall constitute a quorum.

## ARTICLE III

## OFFICERS

**SECTION 1.**   **Election of Officers.** The Board of Directors at any duly held meeting thereof, shall elect a President, a Secretary and Treasurer of the Corporation, and may elect a Chairman of the Board from among the directors of the Corporation, one or more Vice Presidents and any other officer. Each such officer shall serve at the pleasure of the Board of Directors or until his successor shall have been duly elected or appointed and qualifies or until he shall have resigned, shall have deceased or shall have been removed in the manner provided in Section 3 of this Article. Any two offices may be held by the same person, except that no person shall hold the office of President and Secretary concurrently. When all of the stock of the Corporation is owned by one person, such person may hold all or any combination of offices. Any vacancies in the above offices shall be filled in the same manner.

**SECTION 2.**   **Assistant and Subordinate Officers.** The Board of Directors may elect one or more Assistant Treasurers, one or more Assistant Secretaries and such other subordinate officers or agents as it may deem proper from time to time, who shall hold office at the pleasure of the Board of Directors (or the Executive Committee). The Board of Directors may from time to time authorize the President to appoint and remove such assistant and subordinate officers and agents and prescribe the powers and duties thereof.

**SECTION 3.**　　　**Removal**. Any officers of the Corporation may be removed with or without cause by a vote of the majority of the entire Board of Directors of the Corporation then in office at a meeting called for that purpose whenever in their judgment the best interests of the Corporation may be served thereby.

**SECTION 4.**　　　**Compensation**. The Board of Directors shall fix the compensation of all officers of the Corporation who are elected or appointed by the Board of Directors. The Board of Directors shall fix the compensation of all other officers of the Corporation, except that the Board of Directors may authorize the President to fix the compensation of such assistant and subordinate officers and agents as he is authorized to appoint and remove.

**SECTION 5.**　　　**Chairman of the Board**. The Chairman of the Board, if there be one, shall preside at all meetings of the Board of Directors and shall perform such other duties as the Board of Directors may direct.

**SECTION 6.**　　　**President**. The President shall be the Chief Executive Officer of the Corporation and shall, subject to the direction of the Board of Directors, have the general management of the affairs of the Corporation. The president shall preside at the meetings of the Shareholders. If there be no Chairman of the Board, or in his absence or inability to act, the President shall perform all duties of the Chairman of the Board, subject, however, to the control of the Board of Directors.

**SECTION 7.**　　　**Vice Presidents**. Any one or more of the Vice Presidents may be designated by the Board of Directors as an Executive Vice President. At the request of the President or in his absence or during his disability, the Executive Vice President shall perform the duties and exercise the functions of the President. If there be no Executive Vice President, or if there be more than one (1), the Board of Directors may determine which one or more of the Vice Presidents shall perform any of such duties or exercise any of such functions; if such determination is not made by the Board of Directors, the President may make such determination; otherwise, any of the Vice Presidents shall perform any of such duties or exercise any of such functions. Each Vice President shall have such other powers and duties as may be properly designated by the Board of Directors and the President.

**SECTION 8.**　　　**Secretary**. The Secretary shall keep full minutes of all meetings of the Shareholders and of the Board of Directors in books provided for that purpose. He shall see that all notices are duly given in accordance with the provisions of these By-Laws or as required by law. He shall be the custodian of the records and of the Seal or Seals of the Corporation. He shall affix the Corporation Seal to all documents, the execution of which on behalf of the Corporation, under the Seal, is duly authorized by the Board of Directors, and when so affixed may attest the same. He shall have such other powers and duties as may be properly designated by the Board of Directors and the President.

**SECTION 9.**　　　**Treasurer**. The Treasurer shall keep correct and complete books and records of account for the Corporation. Subject to the control and supervision of the Board of Directors and the President, or such other officer as the President may designate, the Treasurer shall establish and execute programs for the provision of the capital required by the Corporation, including negotiating the procurement of capital and maintaining adequate sources for the Corporation's current borrowing from lending institutions. He shall maintain banking arrangements to receive, have custody of and disburse the Corporation funds as required, establish and coordinate policies for investment in pension and other similar trusts, and provide insurance coverage as required. He shall direct the granting of credit and the collection of accounts due the Corporation, including the supervision of special arrangements for financing sales, such as time payments and leasing plans. He shall have such other powers and duties as may be properly designated by the Board of Directors and the President.

## ARTICLE IV

### SHARE CERTIFICATES

**SECTION 1.**　　　**Form and Signatures**. The interest of each Shareholder of the Corporation shall be evidenced by certificates for shares in such form not inconsistent with the law or the Certificate of Incorporation, and any amendments thereof, as the Board of Directors may from time to time prescribe. The share certificates shall be signed by the President or a Vice President and by the Secretary or an Assistant Secretary or the Treasurer or Assistant Treasurer, sealed with the seal of the Corporation, and

countersigned and registered in such manner, if any, as the Board of Directors may by resolutions prescribe. Where any share certificate is counter-signed by a transfer agent or registered by a registrar, other than the corporation itself or its employee, the signatures of any such President, Vice President, Secretary, Assistant Secretary, Treasurer or Assistant Treasurer, and such corporate seal, may be facsimiles engraved or printed. In case any officer who has signed or whose facsimile signature has been placed upon such certificate shall have ceased to be such officer before the share certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person had not ceased to be such officer before the share certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person had not ceased to be such officer.

SECTION 2.        Transfer of Shares.  The shares of the Corporation shall be transferred on the books of the Corporation by the registered holder thereof, in person or by his attorney, upon surrender for cancellation of certificates for the same number of shares, with a proper assignment and powers of transfer endorsed thereon or attached thereto, duly signed by the person appearing by the certificate to be the owner of the shares represented thereby, with such proof of the authenticity of the signature as the Corporation, or its agents, may reasonably require. Such certificate shall have affixed thereto all stock transfer stamps required by law. The Board of Directors shall have power and authority to make all such other rules and regulation as it may deem expedient concerning the issue, transfer and registration of certificates for shares of the Corporation.

SECTION 3.        Mutilated, Lost, Stolen or Destroyed Certificates.  The holder of any certificates representing shares of the Corporation shall immediately notify the corporation of any mutilation, loss, theft or destruction thereof, and the Board of Directors, in its discretion, cause one or more new certificates, for the same number of shares in aggregate, to be issued to such holder upon the surrender of the mutilated certificate, or in case of loss, theft or destruction and the deposit of indemnity by way of bond or otherwise in such form and amount and with such sureties or securities as the Board of Directors may require to indemnify the corporation and transfer agent and registrar, if any, against loss or liability by reason of the issuance of such new certificates; but the Board of Directors may, in its discretion, refuse to issue such new certificates save upon the order of the court having jurisdiction in such matters.

SECTION 4.        Stock Ledgers.  The Stock Ledgers of the Corporation containing the names and addresses of the Shareholders and the number of shares held by them respectively shall be maintained at the principal office of the Corporation, or if there be a transfer agent, at the office of such transfer agent, as the Board of Directors shall determine.

SECTION 5.        Transfer Agents and Registrars.  The Corporation may have one or more transfer agents and one or more registrars of its shares or of any class or classes of its shares whose respective duties the Board of Directors may from time to time determine.

## ARTICLE V

## INDEMNIFICATION

The Corporation shall indemnify (a) any person made or threatened to be made a party to any action or proceeding by reason of the fact that he, his testator or intestate, is or was  a director or officer of the Corporation and (b) any director or officer of the Corporation who served any other company in any capacity at the request of the Corporation, in the manner and to the maximum extent permitted by the Business Corporation Law of New York, as amended from time to time; and the Corporation may, in the discretion of the Board of Directors, indemnify all other corporate personnel to the extent permitted by law.

## ARTICLE VI

## FINANCES

SECTION 1.        Dividends.  Subject to law and to the provisions of the Certificate of Incorporation, and any amendments thereof, the Board of Directors may declare dividends on the stock of the Corporation, payable upon such dates as the Board of Directors may designate.

SECTION 2.    Reserves. Before payment of any dividends, there may be set aside out of any funds of the Corporation available for dividends such sum or sums, as the Board of Directors from time to time, in its absolute discretion, deems proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the Board of Directors shall deem conducive to the interest of the Corporation, and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

SECTION 3.    Bills, Notes, Etc. All checks or demands for money and notes or other instruments evidencing indebtedness or obligations of the corporation shall be made in the name of the Corporation and shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

## ARTICLE VII

## AMENDMENTS

SECTION 1.    Power to Amend. The Board of Directors shall have the power to adopt, amend or repeal the By-Laws of the Corporation by a majority vote of the entire Board of Directors at any meeting. However, any By-Laws adopted by the Board of Directors may be amended or repealed at any meeting of Shareholders by a majority of the votes cast at such meeting by the holders of shares entitled to vote thereon.

SECTION 2.    Notice of Amendment Affecting Election of Directors. If any By-Law regulating an impending election of Directors is adopted, amended or repealed by the Board of Directors, there shall be set forth in the Notice of the next meeting of Shareholders for the election of Directors the By-Law so adopted, amended or repealed, together with a concise statement of the changes made.

BY-LAW 7

## MINUTES OF THE ANNUAL MEETING OF THE SHAREHOLDERS
### Of

_____

All of the shareholders of _____ having consented to
the time and place of the annual meeting, the meeting was held on _____ at _____
in _____, _____.

The President presided over the meeting and the Secretary recorded the minutes. The meeting
was called to order by the President and the role was called, the following Shareholders or persons
holding proxies were present:

NAME                                                     NO. OF SHARES ENTITLED TO VOTE

_____                         _____


_____                         _____


A majority of shareholders or proxies being present, the proxies were ordered to be made a part of
the minutes.

### ITEM 1

The first item of business that was proposed was the waiver of notice of the meeting. The waiver,
having been signed by all of the shareholders, was read aloud by the chairman and was ordered to be
made a part of the minutes.

### ITEM II

The second item of business was the report of the corporate business and finances by the
President.

### ITEM III

The third item of business was the election of directors for a one year term. The President called
for nomination for _____ directors. The election being held and duly verified by the inspector of the
Election, chosen by a majority of the present shareholders and duly sworn, the following persons were
elected as directors:

**Other action taken at the meeting was as follows:**

SHAREHOLDERS 1

There being no further business, the meeting was adjourned by motion duly made, seconded and carried.

_____
, Secretary

Attachments:

    Waiver of Notice

    Oath of Inspectors of Election

    Proxies

SHAREHOLDERS 2

## WAIVER OF NOTICE

The undersigned, being all of the shareholders of _____ , consent that the annual meeting of the shareholders be held at_____, on_____. We waive further notice of the meeting.

_____, President

## OATH OF THE INSPECTORS OF THE ELECTION OF
## DIRECTORS OF

_____

STATE OF

COUNTY OF                                    SS:

 

The undersigned, after being duly sworn, by the undersigned officer authorized to administer oaths, deposes and says that he/she will perform all duties of the election of directors as an Inspector of the Election held at the annual meeting of the shareholders. This task will be performed faithfully and impartially with his/her best ability and independent judgment.

_____

sworn to and subscribe to before me
This _____, day of _____, 19_____.


_____
Notary Public

## PROXY FOR ANNUAL MEETING OF SHAREHOLDERS
## O F

_____

KNOW YE ALL MEN BY THESE PRESENTS, that I am _____

being the owner of_____shares of_____

_____ and hereby constitute and appoint _____

_____ my true and lawful attorney to attend and cast my votes at the annual

meeting of _____ to be held on_____

on any action taken at said meeting until it is adjourned.


IN WITNESS WHEREOF, I have signed my name this _____

day of _____, _____.


_____

_____

_____

SHAREHOLDERS 5

Ex.13 p.42

## MINUTES OF THE REGULAR MEETING OF DIRECTORS
## O F

_____

All of the directors of _____ having
consented to the time and place of the regular meeting of the directors, the meeting was held on
_____, _____ (AM)(PM). at _____

### ITEM I

The first item of business that was proposed was the waiver of notice. The waiver, having been signed by all of the directors, was read aloud by the chairman and was ordered to be made a part of the minutes.

### ITEM II

The second item of business was the report of the corporate affairs by the President and the financial report by the Secretary.

### ITEM III

The third item of business proposed was the appointment of officers of the corporation. A motion was made to appoint the following persons as officers of the corporation:

President:

Secretary:

RESOLVED, that the foregoing, named persons shall hold the office of the corporation as stated for a term of one (1) year or until such time as the Board of Directors may determine from time to time. The compensation shall be fixed as follows:

PRESIDENT: _____

VICE-PRESIDENT: _____

SECRETARY: _____

TREASURER: _____

Other items of business taken was as follows:

DIRECTOR'S MEETING 1

ATTACHED:

WAIVER OF NOTICE

WAIVER OF NOTICE OF REGULAR MEETING OF DIRECTORS

OF

_____

    The undersigned, being all of the directors of _____consent
that the regular meeting of the directors be held at _____
on _____p.m.  We waive further notice of the meeting.

_____
, President

## MINUTES OF THE SPECIAL MEETING OF DIRECTORS

### O F

_____

All of the directors of _____ having consented to the time
and place of the special meeting of the directors, the meeting was held on
_____.

_____,_____,_____.m.at_____

_____

### ITEM I

The first item of business that was proposed was the waiver of notice. The waiver, having been
signed by all of the directors, was read aloud by the chairman and was ordered to be made a part of the
minutes of the meeting.

### ITEM II

The chairman stated that the purpose of the meeting was

Upon motion duly made it was **RESOLVED** that

There being no further business brought before the meeting a motion was made to adjourn,
seconded and carried.

DATE:

_____
, Chairman

_____
, Secretary

Attached:

Waiver of Notice

DIRECTOR'S MEETING 3

## WAIVER OF NOTICE OF SPECIAL MEETING OF
## THE DIRECTORS OF

_____

The undersigned, being all of the directors of _____
consent that the special meeting of the directors be held at _____
_____,
. on _____, _____, _____.m.  We   waive  any  further
notice of the meeting.


SPECIAL DIRECTOR MEETING

No further business having been brought to the meeting, the chairman then called for adjournment, seconded and carried.

DATED:

_____
, Chairman

_____
, Secretary

# Minutes

## and

# By Laws

OF

INCORPORATED UNDER THE LAWS OF

# New York

INCORPORATOR 1

ACCEPTANCE  OF  DIRECTORSHIP

The undersigned hereby agree to serve as the Board of Directors of as of:

_____ :

_____ :

INSTRUCTIONS TO COMPLETE ORGANIZATION WHERE
CORPORATION IS TO HAVE ONE DIRECTOR AND ONE SHAREHOLDER

Remove Directors consent Pages 1 thru 3

Resolutions Adopted by Sole Director

| | |
|---|---|
| Page 1- | Insert Corporation name |
| Page 2- | Insert Officer's name |
| Page 3- | Insert number of shares and amount |
| | Insert name of shareholder and number of shares issued |
| | Date and Sole Director's Signature |
| | Exhibit |
| | Bank Form-- insert a conformed copy of the bank form resolution. |

## ACTION OF

## SOLE DIRECTOR

### - OF -

The undersigned, constituting the Sole Director of _____ ("The Corporation") hereby consents to the adoption of the following resolutions pursuant to Section 708 of the Business Corporation Law.

RESOLVED, that the Statement as to Action of Incorporator(s) in Lieu of Organization of Meeting of this Corporation, be and it hereby is in all respects approved; and that all actions taken by the Incorporator(s) as set forth in said statement be and they hereby are, in all respects, approved, ratified and confirmed;

FURTHER RESOLVED, that the By-Laws in the form adopted by the Incorporator(s), of this Corp- oration and ordered inserted in the minute book of this Corporation, be and they hereby are in all respects, approved and adopted as and for the By-Laws of this Corporation;

RESOLVED, that the seal, an impression of which is set forth in the margin here of, be and the same hereby is adopted as the seal of this Corporation;

SEAL

SOLE DIRECTOR 1

RESOLVED, that the form of Certificates for shares appended hereto be and the same hereby is adop ted as the form of certificates for shares of this Corporation;

RESOLVED, that the share certificate and share transfer books, which are hereby ordered included in the minute book of this Corporation, be and the same hereby are adopted as the share cer-tificate and share transfer books of this Corporation;

RESOLVED, that the persons whose names are set forth below, be and they hereby are elected to the offices opposite their respective names, to serve in such offices until their respective suc-cessors in such offices shall have been duly elected and qualified;

PRESIDENT: _____

VICE-PRESIDENT: _____

SECRETARY: _____

TREASURER: _____

RESOLVED, that the duly authorized officers of this Corporation, be and they hereby are authorized and empowered to open a checking account or accounts in such depositories as they may from time to time determine and to execute such banking resolutions as such depositories may from time to time require, which banking resolutions shall permit checks, drafts, notes, bills of exc h a n g e , acce p t-ances or other orders for the payment of money, or loans, guarantees,endorsements or similar actions to be taken by;

RESOLVED, that any such banking resolutions as may from time to time be executed as in the above resolution recited, shall be deemed incorporated herein by reference as and for the resolutions of this Corporation;

SOLE DIRECTOR 2

**RESOLVED,** that in connection with the proposal(s) of the person(s) whose name(s) is (are) set forth below to purchase the number of common shares, at no par value, set forth opposite such person('s) name(s) the appropriate officers of this Corporation are hereby authorized and directed to issue to such person(s) such number of fully paid and non-assessable common shares, par value, of this Corporation as are so set forth, upon receipt therefore of the sum $_____ per share:

Name                                                                        Number of Shares

_____                                    _____

_____                                    _____


Dated:_____, 19_____

                                                                    _____
                                                                    Sole Director

Annexed hereto:
      Specimen Stock Certificate

**RESOLVED,** that the form of share certificate annexed to this consent as Exhibit A, and made a part hereof, is hereby approved; and be it

**FURTHER RESOLVED,** that the proper officers of the Corporation arehereby authoriz- to issue the approved form of share certificate.

**RESOLVED,** that the stock transfer ledger is hereby approved.

**RESOLVED,** that the corporate banking resolutions, as set forth on the printed form annexed to this consent as Exhibit B, and made a part hereof, are hereby adopted in their entirety.

**RESOLVED,** that it is hereby determined that the financial records of the corporation be maintained on a fiscal year basis, ending on **December 31st**, of each year.

**RESOLVED,** that pursuant to the power vested in the Board of Directors by Section 504 of the New York Business Corporation Law, the considerationfor which the Corporation shall sell shares of common stock is hereby fixed at _____per share and any consideration received for the shares of the Corporation in excess of such stated value will be treated as capital in excess of stated value.

**RESOLVED,** that it is hereby determined that all common shares of the Corporation sold or issued for payment in money or property other than stock and securities shall qualify under section 1244 of the Internal Revenue Code of 1986, as amended, until the aggregate amount of money and other property received by the Corporation for its common shares, as a contribution to capital, and as paid-in surplus exceeds $1,000,000.

**RESOLVED,** that the written offers, which are annexed hereto as Exhibit C,and made a part hereof, to purchase common shares of the Corporation for _____per share have been deliver- ed to the Corporation; and be it,

**FURTHER RESOLVED,** that the Corporation hereby accepts the officers setforthabove to purchase common shares of the Corporation upon the terms and conditions of the written officers; and be it,

DIRECTORS CONSENT 2

**FURTHER RESOLVED,** that the Corporation hereby accepts the offers set forth above to purchase common shares of the Corporation upon the terms and conditions of the written offers; and be it,

**FURTHER RESOLVED,** that the proper officers of the Corporation are hereby authorized to issue appropriate share certificates to the officers upon receipt of the designated consideration.

**RESOLVED,** that any and all actions heretofore taken by the Incorporator(s) or those persons herein elected officers or Directors of the Corporation acting for and on behalf of the Corporation are hereby ratified, approved and confirmed in their entirety; and be it,

**FURTHER RESOLVED,** that   the proper   officers of the Corporation are hereby authorized, empowered and directed to do all things, and   acts and   to execute all documents as  may be necessary, or advisable and proper, to carry on  the  business  of the Corporation, in the best interests of the Corporation.

This consent in writing may be signed in one or more counterparts, each of which shall be deemed an original and constitute one and the same instrument.

Dated:


_____

Director


_____

Director


DIRECTORS CONSENT 3

FILING RECEIPT

EXHIBIT A

SPECIMEN STOCK CERTIFICATE

INITIAL UNANIMOUS WRITTEN CONSENT
OF THE
BOARD OF DIRECTORS
OF

_____

     The undersigned, being all of the Directors of _____ a New York Corporation (the "Corporation") hereby takes the following action, which the Board of Directors is permitted to take without a meeting pursuant to Section 708(b) of the New York Business Corporation Law:

     **RESOLVED,** that the action of Incorporator(s) is hereby approved, ratified, confirmed and ordered filed in the minute book.

     **RESOLVED,** that the By-Laws in the form adopted by the Incorporator(s) are hereby approved and adopted as the By-Laws of the Corporation.

     **RESOLVED,** that the following persons be, and they hereby are, elected to the offices set forth opposite their names below to serve at the pleasure of the Board of Directors or until their successors are elected or appointed and shall qualify:

     PRESIDENT:    _____

     VICE-PRESIDENT:_____

     SECRETARY:   _____

     TREASURER:_____

     **RESOLVED,** that the seal, an impression of which is made on the margin of this consent, is hereby adopted as the seal of the Corporation.

SEAL

DIRECTORS CONSENT 1

EXHIBIT B

CORPORATE BANKING RESOLUTIONS

(To be provided by client)

## EXHIBIT C

## OFFER TO PURCHASE SHARES

TO:     The Board of Directors of _____


       The undersigned hereby offers to purchase_____
shares of common stock of_____     a  New York corporation (the
"Corporation") for an aggregate purchase price of _____payable in cash at the time of the
issuance and delivery of the shares.


Dated:


                                       _____

## EXHIBIT C

## OFFER TO PURCHASE SHARES

TO:   The Board of Directors of _____

     The undersigned hereby offers to purchase_____
shares of common stock of _____ a New York corporation (the
"Corporation") for an aggregate purchase price of _____payable in cash at the time of the
issuance and delivery of the shares.

Dated:

_____

## EXHIBIT C

## OFFER TO PURCHASE SHARES

TO:  The Board of Directors of _____

     The undersigned hereby offers to purchase_____ shares of common stock of _____ a  New York corporation (the "Corporation") for an aggregate purchase price of _____payable in cash at the time of the issuance and delivery of the shares.

Dated:

                                                                  _____

## EXHIBIT C

## OFFER TO PURCHASE SHARES

TO:    The Board of Directors of _____

     The undersigned hereby offers to purchase_____
shares of common stock of _____ a  New York corporation (the
"Corporation") for an aggregate purchase price of _____payable in cash at the time of the
issuance and delivery of the shares.

Dated:

_____

## UNANIMOUS WRITTEN CONSENT
### OF THE
### SHAREHOLDERS
### O F

_____

The undersigned, being all of the Shareholders of _____ a New York corporation (the "Corporation"), hereby takes the following action which the Shareholders are permitted to take without a meeting pursuant to Section 615(a) of the New York Business Corporation Law:

RESOLVED, that any and all actions heretofore taken by the Incorporator, Directors or officers of the Corporation, for and on behalf of the Corporation, are hereby ratified, confirmed and approved in their entirety; and be it,

FURTHER RESOLVED, that the Directors and officers of the Corporation be, and the same hereby are, authorized, empowered and directed to do all things and acts and to execute all documents as may be necessary or advisable and proper to carry on the business of the Corporation.

This consent in writing may be signed in one or more counterparts, each of which shall be deemed an original and constitute one and the same instrument.


_____
, Shareholder


_____
, Shareholder

CLASS OF SHARES

# SHAREHOLDERS REGISTER    _____

| NAME OF REGISTERED SHAREHOLDER | NUMBER OF SHARES ISSUED | DATE OF ISSUANCE | | DATE OF TRANSFER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# DIRECTORS REGISTER

| FULL NAME OF DIRECTOR | ELECTED DATE | | RESIGNED DATE | | RESIDENTIAL ADDRESS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

EXHIBIT 2

NYS–45–ATT–MN
(7/06)    **Quarterly Combined Withholding, Wage Reporting, And Unemployment Insurance Return–Attachment**


60620613

Withholding identification number:  260351094    6

Mark an **X** in the applicable boxes:

A.  Original  X   or   Amended return

| Jan 1 – Mar 31 | X | Apr 1 – Jun 30 | July 1 – Sep 30 | Oct 1 – Dec 31 | Tax year | 0 9 |
|---|---|---|---|---|---|---|
| 1 | | 2 | 3 | 4 | | Y Y |

## File Copy - Retain for Records

Employer legal name:

Image Rent A Car Inc
245C

## File Copy - Retain for Records

B.  Other wages only reported on this page. ....

C.  Seasonal employer

### Quarterly employee/payee wage reporting information
(Do not enter negative numbers in columns c, d, and e; see instructions)

**Annual wage and withholding totals**
If this return is for the 4th quarter or the last return you will be filing for the calendar year, complete columns d and e.

| a Social security number | b  Last name, first name, middle initial | c  UI total remuneration/ gross wages paid this quarter | d Gross wages or distribution (see instr.) | e Total tax withheld |
|---|---|---|---|---|
| | Benjamin, Adina | 2600.00 | | |
| | Bullen, Nigel | 5500.00 | | |
| | Guique, Yosef C | 3575.00 | | |
| | Carr, Marcy E | 6105.00 | | |
| | Hinds, Clive | 5500.00 | | |
| | Vilenkin, Chana | 1950.00 | | |
| | Serrano, Madeline | 5400.00 | | |
| | Zilberman, Shneior | 8950.00 | | |
| | Parris, Maureen M | 6600.00 | | |
| | Istiraneopulos, Rogerio | 900.00 | | |
| | Soleyn, Recardo | 2720.00 | | |

Page No  1  of  1   Total this page only .............   49800.00
If first page, enter grand totals
of all pages ....................   49800.00

| Contact information (see instructions) | Name | | Daytime telephone number |
|---|---|---|---|

For office use only
Postmark              Received date

Mail to: NYS EMPLOYMENT TAXES
PO BOX 4119
BINGHAMTON NY 13902-4119

**File Copy - Retain for Records**    EXE

7  NYSATT1    NTF 2571029C    Copyright 2007 Greatland/Nelco – Forms Software Only

EXHIBIT 3

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through November 30, 2010.

Selected Entity Name: IMAGE RENT A CAR INC.
Selected Entity Status Information

**Current Entity Name:** IMAGE RENT A CAR INC.
**Initial DOS Filing Date:** OCTOBER 29, 2004
**County:** KINGS
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
IMAGE RENT A CAR INC.
391 EMPIRE BLVD
BROOKLYN, NEW YORK, 11225

**Chairman or Chief Executive Officer**

GAO SEBAF
391 EMPIRE BLVD
BROOKLYN, NEW YORK, 11225

**Principal Executive Office**

IMAGE RENT A CAR INC.
391 EMPIRE BLVD
BROOKLYN, NEW YORK, 11225

**Registered Agent**

NONE

This office does not record information regarding the names and addresses of officers,
shareholders or directors of nonprofessional corporations except the chief executive
officer, if provided, which would be listed above. Professional corporations must include
the name(s) and address(es) of the initial officers, directors, and shareholders in the initial
certificate of incorporation, however this information is not recorded and only available
by viewing the certificate.

**\*Stock Information**

**# of Shares  Type of Stock  $ Value per Share**
200          No Par Value

\*Stock information is applicable to domestic business corporations.

**Name History**

**Filing Date   Name Type        Entity Name**
OCT 29, 2004  Actual        IMAGE RENT A CAR INC.

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its
activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

EXHIBIT 4



## Image Rent A Car

*Luxury Cars, Exotic Cars,*
*Convertibles & Vans*
*delivered directly to YOUR door!*

**JFK Airport**
(Doubletree
Hotel Lobby)
135-30 140th St,
Jamaica, NY 11436
**718-739-6300**

**Brooklyn NY**
391 Empire Blvd
Brooklyn NY 11225
**718-771-6666**

**Newark Airport**
Via Delivery

**Long Island**
Via Delivery

**All Other Locations:** 888.718.0001 and Florida 888.718.0005

EXHIBIT 5



EXHIBIT 6



KRONENBERGER | BURGOYNE

150 Post Street
Suite 520
San Francisco, CA 94108

Phone  415.955.1155
Fax    415.955.1158
www.kronenbergerlaw.com

January 19, 2009

*VIA FedEx Overnight Courier*

Gao Sebaf, CEO
Image Rent A Car, Inc.
391 Empire Blvd
Brooklyn, New York, 11225

     Re:    **Bandago; Infringement of Trademark**

Dear Mr. Sebaf:

     We are litigation counsel to Digby Adler Group LLC *d/b/a* Bandago ("hereinafter, **Bandago**"), which has provided rental van and car services under the brand name BANDAGO since 2003. Our client has filed a federal trademark application on the term BANDAGO with the U.S. Patent and Trademark Office for use in connection with car and van rental services (Ser. No. 77484380). The BANDAGO application has completed the publication period and should proceed to registration shortly.

     We are informed that Image Rent A Car, Inc. has registered the domain name <bandago.net>, which, except for the generic top-level domain "net," contains the BANDAGO mark in its entirety. Moreover, you are re-directing Internet traffic from the <bandago.net> domain to your website at http://www.imagerentacar.com/ to promote your competing rental van and car services. Clearly, you have registered and are using the <bandago.net> domain name in bad faith to unlawfully mislead and attract to your website consumers who are intending to purchase Bandago's services.

     Your registration of the <bandago.net> domain has resulted in numerous documented instances of consumer confusion and constitutes violation of the federal Anticybersquatting Consumer Protection Act (ACPA) and applicable federal and state laws governing trademark infringement, false advertisement, unfair competition, and unfair business practices. Be advised that the remedies for an ACPA violation include attorneys' fees, costs and statutory damages up to $100,000 per domain name.

     Trademark owners have filed claims under the ACPA with much success, often obtaining large statutory damages awards up to and including the $100,000 statutory maximum, plus attorneys' fees and costs. *See Petmed Express, Inc. v. Medpets.com, Inc.,* 336 F.Supp.2d 1213 (SD Fla., 2004) (awarding plaintiff **$100,000** in statutory damages); *Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567 (ED Penn. 2002) (awarding plaintiff **$100,000** in statutory damages); *see also E-Stamp Corp. v. Dave Lahoti,* No. CV 99-9287. (C.D. Cal. 2000) (awarding plaintiff a permanent injunction and **$305,615** in attorney's fees); and *Electronic Boutique Holdings Corp.  v. Zuccarini,* Case No. 2:2000-cv-04055-BMS (Oct. 30, 2000) (**$27,487** in attorneys fees). Given your wanton and willful misconduct, it is difficult to imagine a cleaner-cut set of facts on which our client can build a case and obtain its full measure of remedies.

INTERNET LAW, E-COMMERCE & MEDIA ATTORNEYS

Accordingly, on behalf of Bandago, we hereby request that you immediately comply with the following demands:

> 1. **Take all action necessary to assign and transfer to our client all rights in the <bandago.net> domain name, and any other domain names that contain the BANDAGO mark (or confusingly similar variations thereof); <u>and</u>**

> 2. **Cease and desist from using the BANDAGO mark in any other unlawful way; <u>and</u>**

> 3. **Pay damages to Bandago in the amount of $45,000.00 to compensate our client for the harm that it has suffered.**

Should you fail to comply with the above stated demands by *January 26, 2010*, our client will file suit against you in the appropriate U.S. federal court in which our client will seek statutory damages, attorneys' fees and costs, and any and all other available relief. We strongly encourage you take this *limited-time opportunity* to settle this matter.

This letter does not constitute a complete or exhaustive statement of all of our client's rights, claims, contentions or legal theories regarding this matter. Nothing stated herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of our client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Sincerely,

KRONENBERGER BURGOYNE, LLP

Matthew M. Thomson

Matthew M. Thomson

cc:     *Digby Adler Group LLC d/b/a Bandago*

2

EXHIBIT 7

ID #7891318

Regarding Image Rent A Car's refund policy:

Typically, when a customer rents a vehicle, the customer pays for the time "bought/reserved" specifically for him, and no other booking on that vehicle is done as a result. If the vehicle is returned earlier, the money is refunded for the unused portion of the rental, less any volume discount that may have been initially applied.

In the above–referenced case, the customer stated that he told the rental agent he might need it for less time. When such a scenario occurs, rental agents advise the client to reserve and pay for less days and in the event that the vehicle may still be needed, the renter would have the option to extend, and pay for the extension then.

When a customer has a dispute, company policies are followed through and the rental agent refers the client to the quality-assurance department to resolve any issues. Customers are never left on hold by the rental agents, (who answer all phone calls), for an extended period, especially when the purpose of the call is known and it is beyond the rental agent's authority to resolve. He may have been left on hold unintentionally for a long period of time (as he claims) without stating the purpose of his call. This sometimes happens when there are many calls simultaneously. Our agents work hard to process each call in the order it was received. Our motto is "We aim for excellence", and as such we strive to have every client leave our office happy.

The above response being said, Image Rent A Car has refunded the $55+ tax (total $62.91)        that        the        client        has        requested        to        be        refunded.

IMAGE Rent A Car
391 EMPIRE BLVD
BROOKLYN, NY 11225
(888) 718-0001

## Contract #  1118591

Floyd Mccoy
755 Linden Blvd
Brooklyn, NY 11203

## Rental Summary

| | | | | Date | Time | Odom | Fuel | Loc |
|---|---|---|---|---|---|---|---|---|
| 1. Unit #: NS28 | | | | | | | | |
| Rented Class: SMALL | Lic: ERP 7097 NY | | Out: | 05/15/2009 | 16.55 | 30 | 0 | MAIN |
| 2009 NISSAN SENTRA | VIN: 3N1AB61E59L609664 | | In: | 05/18/2009 | 15.21 | 134 | 0 | MAIN |
| 2. Unit #: | | | | | | | | |
| Rented Class: SMALL | Lic: | | Out: | | 0.00 | 0 | 0 | |
| 0 | VIN: | | In: | | 0.00 | 0 | 0 | |

## Charge Summary

| Description | Charged | Rate | Per | Amount |
|---|---|---|---|---|
| 3 days period | 1 | 189.99 | period | 189.99 |
| Excess Miles | | .25 | /mi | |
| Net T&M | | | | 189.99 |
| | | | | |
| SALES TAX | | 14.375 % | | 27.31 |
| Subtotal of Other Charges | | | | 27.31 |
| | | | | |
| Total Charges | | | | 217.30 |
| | | | | |
| Deposit MC 5121 4203 | | | | 280.21 |
| Payment MC 5121 4203 | | | | −62.91 |
| Total Deposits/Payments | | | | 217.30 |

EXHIBIT 8

## Express Internet Technologies Inc. Account Statement

| Customer Name | Invoice Number | Account Number | Advance Period | Usage Period | Due Date |
|---|---|---|---|---|---|
| Connie Green | 9842810 | 1645569 | 11/2/2010 - 12/1/2010 | 10/2/2010 - 11/1/2010 | Upon Receipt |

Connie Green
Image Rent-A-Car
391 Empire Blvd

Brooklyn, NY

**Balance Summary**

| | |
|---|---|
| Previous Balance | $ 0.00 |
| Revolution System License Fee (Recurring Fee ) | 300.00 |
| Revolution Mobile (Recurring Fee ) | 39.00 |
| CRX Service Revenue (CRX Inquiry Booking (7.00 counts @ $3.50) ) | 24.50 |
| Taxes | 0.00 |
| Electronic Payment (applied 11/3/2010) | - 363.50 |
| **Balance Due 11/2/2010** | **$ 0.00** |

GST #: 86882 0978 RT001

Please pass this information to your accounting department. You risk suspension of services if prompt payment is not received. Account balances 30 days past due are charged at 1.5% interest/month.

EXPRESSITECH - INNOVATION FOR THE RESERVATION INDUSTRY. You may want to check out some of our other services for your rental business. You'll find them at http://www.expressitech.com

QUESTIONS OR CONCERNS? If you have a billing question, email us at: accounts@expressitech.com

THANK YOU!

## How to reach ExpressITech Customer Care

**By Email**
accounts@expressitech.com

**By Mail**
7 - 15715 34th Avenue
Surrey, BC, CANADA
V3S 0J6

**On the Internet**
www.expressitech.com

This e-mail, including any attachments, may contain confidential material and its transmission is not a waiver of that confidentiality. It is intended for the sole use of the person to whom it is addressed. Any copying, disclosure, distribution or reliance on this material by anyone other than the intended recipient is strictly prohibited. We assume no responsibility to persons other than the intended recipient. If you have received this transmission in error, please notify the sender immediately by reply e-mail and destroy any hard copies you may have printed and remove all electronic copies from your hard drive, network or any other location where electronic information is stored. Thank you.

EXHIBIT 9



Dear Mr. Sebag,

I have been speaking with our Rabbi and I have come to the conclusion, after much discussion, that I should write to you personally. This might come as a surprise to you, but I do not have any personal antagonism towards you or Image Rent A Car, and I hope to persuade you from causing unnecessary damage to your company as a result of this case.

Let me explain how things came to be:

I recently spent over a year fighting against a multi-billion dollar corporation (Bridgestone Tires) for the right to trademark our name Bandago. After a long battle I was ultimately successful in obtaining our trademark. I learned a lot about trademark law in the process. One of the things I have learned is that if you own a trademark you are legally obligated to police its misuse and defend it from infringement. If you do not take these actions, you run the risk of losing your trademark. This is an important element of settled trademark law.

Shortly after winning our trademark case I discovered "Bandago.net". For months we had customers asking us if we were affiliated with Image Rent A Car. We were mystified as to why they would think so. After discovering the "Bandago.net" site it became clear why this was happening. At that point I had no choice but to defend our trademark, though I was not eager to start litigating. Thus, we sent you a cease and desist letter along with a settlement offer. We expected an apology and perhaps some negotiating about the amount of the settlement. But we expected you to do the right thing in the end. Instead you did a number of strange things that indicated very little knowledge of the law, but most importantly you claimed senior rights to our trademark, Bandago.

Originally I had hoped to settle this like gentlemen. But since you are claiming senior rights, we now have no choice but to prosecute our case fully and prevail in a complete and total victory.

I am confident we will be successful in this case. I have had to deal with several difficult legal cases over the years. This is not one of them. In fact this is one of the more straightforward cases in which I have ever been involved. Moreover, your weak case is not helped by your improper court filings. To date, in a good faith effort, we have granted you and your counsel wide latitude in making these various procedural errors. However, our patience is quickly running out as these errors continue, making them seem less and less inadvertent. In particular, your recent appeal has absolutely no basis in law and will be dismissed. You are wasting everyone's time and money, but mostly your own

Based on all of the above, I am not worried about whether we will prevail. We will. But I am worried about the impact this case will have on you, your family, your employees and their families. You might think I am being unnecessarily aggressive. That is not the case. I am simply fulfilling my legal obligation to defend our trademark, which is an important aspect of maintaining our trademark rights. My goals remain that I want you to stop using our name for your website (which you did) and make things right by compensating us for misusing our name (which you have not). When you do something wrong, you have a moral obligation to make it right. That is what I expect from you and your company.

Even though I think you have engaged in some inappropriate conduct, I do have a sense of proportion. I do not want to destroy your company. I do not want your employees or your family to suffer because you lost a large and substantial judgment. There is plenty of business for all of us and no reason for your company to waste precious resources fighting needlessly and hopelessly.

2200 Cesar Chavez #16 | San Francisco, CA, 94124 | 1-866-878-7826 toll free | 1-415-401-72247 fax



We are not out to destroy our competitors. We simply seek to protect our trademark, a right that we fought a long and difficult battle to obtain.

I have learned that Image Rent A Car has ties to the Chabad community. I want you to know that I also have ties to the Chabad community. My children attend a Chabad preschool. My wife's father, Zev Putterman, was close friends with Chabad Rabbi Josef Langer, and along with Rabbi Langer and Bill Graham was instrumental in establishing the lighting of the public menorah in downtown San Francisco, the first of its kind in the United States. He died some time ago but Rabbi Langer tells me he still thinks of him often. Rabbi Gedalia Potash is our rabbi, and is a member of the Chabad community as well. He and his family are dear friends, and he is familiar with Image from his many visits to Brooklyn. With all of our mutual ties it pains me deeply to see this case proceeding as it has.

Please understand that I do not enjoy conflict, and would prefer to avoid it if possible. However, I have a legal obligation to defend our trademark, and a moral obligation to not allow other companies to misuse our name. If you choose to not settle with us we will have no choice but to prosecute this case to the end. By that time you will stand to lose hundreds of thousands of dollars between your own expenses, our legal expenses - which I believe you will be ordered to pay - plus any damages awarded by the judge. And since we will have spent a great deal of time and money defending our trademark we will have no choice but to collect every penny of that judgment. While I will feel bad for your employees, and your respective families, my company and my employees remain my top priority. And it is my employees and their families who will suffer the most if we do not vigorously enforce our trademark rights, including prosecuting this case.

I therefore, strongly encourage you to review and accept this settlement offer:

- You will pay our legal fees to date.
- You will pay an appropriate fine for misusing our name. We can discuss the amount.

I think it's important for you to keep things in perspective. You can end this entire lawsuit now for the price of a handful of vans. Painful, but survivable. Or you can choose to not settle, in which case you will likely wind up paying far more. The damage to your business will most likely be severe as a result. As I explained you have put us in a position where we have no choice but to completely enforce our rights against your companies. Please take some time to consider what effects this will have on you, your companies, your employees, and all of your families.

Good businessmen know when to settle. Sometimes the price of victory is too high, or the risk of failure too expensive. I have had to settle before. There is no shame in settling. It's about making good business decisions.

While I have complete confidence in the strength of our case, out of compassion for your family and your employees, and out of respect for our common faith, I sincerely hope you recognize that settling this case now would be your best move. I hope for your sake that's the choice you choose. But if you want to continue, then we shall as well, with great conviction. Do not underestimate the value of this case Mr. Sebag, or our tenacity. Choose wisely.

Respectfully,

Sharky Laguana
CEO
Bandago

2200 Cesar Chavez #16 | San Francisco, CA, 94124 | 1-866-878-7826 toll free | 1-415-401-72247 fax